**JORDAN et al. v. BUICK MOTOR CO. et al.**

**No. 5190.**

Circuit Court of Appeals, Seventh Circuit.
Feb. 4, 1935.

Rehearing Denied March 19, 1935.

The court sustained a demurrer to appellants' amended complaint. Appellants elected to stand by it, and a decree was entered which dismissed the suit. This appeal followed.

T. H. Spence and Arthur Wickham, both of Milwaukee, Wis., for appellants.

Edwin S. Mack and J. G. Hardgrove, both of Milwaukee, Wis., for appellee Buick Motor Co.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

EVANS, Circuit Judge.

The complaint in substance alleges that two agents of Buick Motor Company, with authority to so speak, represented to appellants (and appellee Hansen) that if $40,000 more capital were secured for the E. M. Jordan Buick Company, it would be granted an exclusive agency to sell and service Buick

cars in the county of Milwaukee and would be given the use of a Buick showroom located in Milwaukee. Appellants contributed the additional capital amounting to $40,000. For a short period Jordan Company was given the use of the showroom, but no exclusive agency was ever granted. The complaint attempts to state a cause of action ex contractu and also one ex delicto for damages in the sum of $40,000. A statement of the detailed allegations appears later.

Appellees advance numerous reasons for sustaining their demurrer.

As to the first cause of action, viz., the one based on the breach of contract, the chief reliance of appellees is the indefiniteness of the agreement. They assert the agreement which is pleaded was too indefinite as to duration, terms, details of agency's rights, etc., to be enforceable.

As to the second cause of action, the one sounding in tort, they support their demurrer on the grounds that (a) there was an improper joinder of several independent causes of action, there being no proper basis for their joinder; (b) the complaint improperly joined several causes of action for fraudulent representations, each one accruing to a different individual; (c) if any cause of action exists, it was in favor of the Jordan Buick Company; and (d) the representations upon which the deceit action is predicated were innocuous because they were pure prophecy of possible profits. These were matters of opinion concerning which appellants were as well or better informed than appellee Buick Company.

Because of its length, only the substance of the complaint is set forth:

The allegations material to the first cause of action are that Carter was the regional manager in Chicago, and Truax, the branch manager of the Buick Company in Milwaukee; that they had charge of its business in the city and county of Milwaukee and had authority to contract on its behalf and transact the business "hereinafter set forth"; that E. M. Jordan Buick Company was a Wisconsin corporation engaged in selling and servicing automobiles, largely Buick makes, in the county of Milwaukee; that E. M. Jordan was its president and managing officer; that in September, 1930, Jordan was called to Chicago by Truax and Carter and advised that it was necessary for the E. M. Jordan Buick Company to secure additional capital; that Jordan replied that he would not attempt to secure additional capital until he had obtained some

definite assurance that the local situation in Milwaukee with respect to unethical practices engaged in by certain dealers was remedied; that Carter, who was acting on behalf of the Buick Motor Company, thereupon made the following offer, that if $40,000 additional capital was invested in the Jordan Company, the Buick Company would grant it the exclusive right to sell automobiles manufactured by Buick Motor Company, and the exclusive right to service said cars and to have the exclusive right to act in said city as the Buick dealer.

Carter also offered to permit the Jordan Buick Company to use the show room floor of said Buick Motor Company which was located on East Wisconsin Avenue in said city for the purpose of soliciting sales and selling Buick automobiles; that Carter then represented that if the additional capital were invested in the Jordan Company and the exclusive rights as above set forth were granted, the net profits to the Jordan Company would be from $75,000 to $100,000 per year. It was impliedly represented that said exclusive rights would be granted for such a period of time as would be reasonable under the circumstances. It was further agreed that the said offer and the said representations were thereafter made by the Buick Company to the plaintiffs and to defendant Hansen, jointly, that the plaintiffs and Hansen did jointly accept said offer and did pay into the treasury of the Jordan Buick Company the sum of $40,000 and, upon said payment, certificates of preferred stock of said Jordan Company were issued to them.

The complaint further alleges that the Buick Company did, for a short period of time permit the Jordan Buick Company to use its show room floor and that thereafter, although Jordan Buick Company was ready, willing and desirous of carrying out the exclusive right of acting as Buick dealer, the Buick Company refused to grant such exclusive right; that the defendant Hansen is made a party defendant because he refused to join as party plaintiff.

It further alleges that because such agreement was not carried out certain economies could not be effected and Jordan Company was unable to make the profits which it otherwise would have made; that had such contract been carried out the preferred stock of the Jordan Company would have had a reasonable market value of $40,000.

It is further alleged that because of the breach of said contract by Buick Motor

Company, Jordan Buick Company became a bankrupt and was duly so adjudged and the estate of said bankrupt was wound up and the trustee ultimately discharged and the said plaintiffs and said defendant Hansen received nothing from said estate and nothing will be paid to them because of their preferred stock; that said preferred stock now is of no value and that they have suffered a loss of $40,000 by reason of Buick Company's wrongful and unlawful breach of the contract.

For their second cause of action appellants repeat the allegations of the first cause of action and state in addition thereto:

"That on the occasions when said Carter and said Truax made said offer jointly to the plaintiffs and the defendant Hansen, they impliedly represented and did in fact positively assert and represent to the plaintiffs and the defendant Hansen jointly that the defendant Buick Motor Company would grant said exclusive rights either to said E. M. Jordan Buick Company or to this company and another company which would be controlled by and the stock of which would be owned by said E. M. Jordan Buick Company; that said offer and the representations then made as plaintiffs are informed and believe, were not made in good faith but with an intent to deceive and injure the plaintiffs and the defendant Hansen; and that they were made by said agents as plaintiffs are informed and believe without any knowledge or reason to believe that their principal, the defendant Buick Motor Company, would perform the terms and conditions which said agents had held out that it would perform, recklessly and with no regard as to the truth of said representations."

The second cause of action also charges:

"That the defendant Buick Motor Company, as plaintiffs are informed and believe, knew and was advised of the offer made jointly to the plaintiffs and the defendant Hansen, and of the representations then made; that such was some time prior to the time that the plaintiffs and the defendant Hansen paid the sum of Forty Thousand Dollars ($40,000.00) to said E. M. Jordan Buick Company; that in the meantime the plaintiffs and the defendant Hansen believed and acted on their belief that such exclusive rights would be granted; that they and each of them were justified and entitled to so do; that they and each of them were thereby misled; that the defendant Buick Motor Company knew and should have known that the plaintiffs and the defendant Hansen

would probably act upon said offer and said representations and would probably pay to said E. M. Jordan Buick Company the sum of Forty Thousand Dollars ($40,000.00); that neither defendant Buick Motor Company nor anyone else advised the plaintiffs, the defendant Hansen or any of them that the defendant Buick Motor Company would not grant the exclusive rights above referred to or any of them until notice of this fact was given to the plaintiff Jordan in April of 1931; and that as a result thereof the plaintiffs and the defendant Hansen and each of them relied and acted upon said offer and said representations and paid to said E. M. Jordan Buick Company said sum of Forty Thousand Dollars ($40,000.00).

"That by reason of the acts and the representations of said Truax and said Carter, by reason of the failure of the defendant Buick Motor Company to inform the plaintiffs and the defendant Hansen that it would not grant said exclusive rights and by reason of the fraud and deceit of the defendant Buick Motor Company the plaintiffs and the defendant Hansen jointly have been damaged in the sum of Forty Thousand Dollars ($40,000)."

 It would seem that the first asserted cause of action must fall because the agreement lacks that certainty and definiteness which is necessary to spell out a valid contract. Restatement of the Law of Contracts, § 32. In substance the agreement set forth in the complaint provided that Buick Company would make the Jordan Company its exclusive dealer in the territory of Milwaukee in consideration of appellants' putting into the Jordan Company $40,000 of additional capital. In view of the other facts alleged, it was unfortunate that the parties failed to specifically and definitely define their respective obligations. Neither the time when the contract was to begin, nor the period for which it was to be effective, appears. Nothing is said about the cost price of the cars or the terms upon which they would be delivered. The agreement fails to specify the number of cars or the models which were to be handled. Nothing is stated about where the servicing of Buick cars would be carried out or the kind and character of such service. The number and qualifications of service mechanics are not mentioned.

We might well assume that the price would be the regular price and the discount terms the usual ones, but how many cars were to be ordered? When and how were

they to be delivered? If the Jordan Company were not required to order any specified number of cars, was the Buick Company in turn required to deliver any specified number in case of urgent calls from others?

Similar questions have been considered in the cases cited in appellees' brief. They include the following: Ford Motor Co. v. Kirkmeyer Motor. Co., 65 F.(2d) 1001 (C. C. A. 4); George W. Wilcox, Inc., v. Shell Eastern P. Products, 283 Mass. 383, 186 N. E. 562; Oakland Motor Car Co. v. Indiana Automobile Co. (C. C. A.) 201 F. 499; Nebraska Aircraft Corp. v. Varney (C. C. A.) 282 F. 608. The weight of authority seems to be strongly against appellants' contention that the agreement was sufficiently specific to be upheld. We are unable to escape the rule which these decisions announce and apply.

The most persuasive fact which appears in the record to distinguish the instant case is the existence of dealer-manufacturer relationship at the time the alleged exclusive agency agreement was negotiated. Jordan Company was a Buick dealer when this alleged agreement was made. It is therefore argued with some force that the terms of the existing dealer agreement should be read into the new agreement—the exclusive dealer's agency. Page on Contracts, vol. 1, § ·101.

Courts, however, may not assume that exclusive contracts are executed on the same terms as non-exclusive agency contracts. The advantages of exclusive contracts to the dealer are asserted by appellee Buick in this suit· to be substantial. For such exclusive privileges and advantages the manufacturer might, and doubtless would, insist upon provisions prescribing the minimum number of cars which the dealer must buy each year, as well as special provisions relating to different models, terms, and conditions of payment. Moreover, credit terms would doubtless be covered specifically.

Courts may well refuse to take judicial notice of the differences between exclusive and non-exclusive dealers' contracts. For a better reason they will not assume that their terms are similar. Wilcox, Inc., v. Shell Eastern P. Products Co., supra, deals with the requirement of an exclusive contract.

Our conclusion is that the agreement, as it alleged, was too indefinite and left too many material subjects untouched to be binding.

■ The closer question is presented by the demurrer to the second cause of. action, which is based upon alleged fraud and deceit.

It is not questioned in Wisconsin but what one who possesses two causes of action may unite them in one complaint even though one be in tort and the other for breach of contract, the parties being the same and both causes of action having arisen out of the same transaction. Notwithstanding the liberality in rules of pleadings in Wisconsin which permits joinder of numerous causes of action in one suit, it is however not permissible to unite causes of action unless the parties are the same. Section 263.04 of the Statutes provides:

*"Uniting Causes of Action.* The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable or both. But the causes of action so united must affect all the parties to the action and not require different places of trial, and must be stated separately."

Do the causes of action set out in the complaint before us affect all the parties to the action? By appellees, it is argued (assuming a cause of action is otherwise stated) that each of the appellants has a separate cause of action for damages based upon the alleged fraud and deceit practiced by the agents, Carter and Truax. In other words, they do not have a cause of action running to them jointly because of such fraud.

This position seems invulnerable to successful attack unless we are to construe certain words of the complaint as controlling. The gist of a cause of action based upon fraud is damages. Whether an individual suffers recoverable damages by virtue of fraudulent representations depends upon the actionable character of the representations, the reliance of the individual thereon and· the right of said individual to rely upon such representations and the damages suffered by him. Had one of the appellants sold his stock in Jordan Company for its face value before that company failed, he could not have collected damages from Buick Company. If the second appellant did not rely upon the statement made by Carter and Truax, but invested his money upon his own judgment as to the profitableness of the venture, he likewise would be denied judgment. There are four or five different elements which each plaintiff must establish before he can recover. How then may A's cause of action be joined with B's? Obviously it cannot.

Appellants have sought to avoid the consequences of such a necessary holding by at-

tempting to plead a cause of action in favor of themselves, *jointly*. They charge "that the offer and the representations were thereafter made by the Buick Company to the plaintiffs and to defendant Hansen, jointly," and that said plaintiffs (appellants) and defendant (appellee) Hansen did *"jointly"* accept said offer and did pay into the Jordan Company the sum of $40,000.

It does not appear that the stock was issued to the appellants *jointly*. The contrary is implied from the use of the plural when it is alleged, "The plaintiffs and defendant Hansen then agreed among themselves to pay the sum of $40,000 to the Jordan Buick Company and to jointly accept said offer; that the plaintiffs and the defendant Hansen thereupon jointly accepted said offer * * * and so advised the defendant, the Buick Motor Company * * * that upon said payment *certificates* for the preferred stock of said Jordan Company were issued to them." The most that can be said is that they "jointly accepted the offer." They did not jointly make the payment of $40,000. The damage occurred when the money was paid. This was, as to each of them, an individual affair.

The complaint further alleged that by reason of the acts and representations of Truax and Carter and by reason of the failure of the Buick Company to inform the appellants that it would not grant said exclusive right, etc., the appellants and the appellee Hansen *jointly* have been damaged in the sum of $40,000. The word "jointly" as here used is not an allegation of fact but a conclusion of the pleader. The appellants and appellee Hansen were not partners. Each was a stockholder in the Jordan Company. Each added to his investment upon the appellee's agents' assurance that Jordan Company was to be the exclusive Buick dealer in Milwaukee. Each received from the Jordan Company a certificate representing the amount of his increased investment.

From these facts, we conclude that if any action for damages may be enforced against Buick Company, it would be in favor of each of the appellants and would not be a liability to all of them jointly. This being the situation the demurrer was the proper pleading to challenge the joinder of such causes of action. Ernest v. Schmidt, 199 Wis. 440, 223 N. W. 559, 221 N. W. 26. It was properly sustained.

The judgment is
Affirmed.

*Writ of certiorari granted 55 S. Ct. 826, 79 L. Ed. —.