GRIMM ET AL. *v.* BAUMGART.

[No. 18,083. Filed March 5, 1951. Rehearing denied April 11, 1951. Transfer denied November 23, 1951.]

*Brubaker, Rockhill & Lee,* of Warsaw; and *Ortmeyer, Bamberger, Ortmeyer & Foreman,* of Evansville, for appellants.

*Newman & Salm,* of Evansville, and *Waldo Hendrickson,* òf Boonville, for appellee.

*Emison & Emison,* of Vincennes, and *Hickam & Hickam,* of Spencer, Amici Curiae.

ROYSE, J.—The facts out of which this litigation arose, as disclosed by the record, may be summarized as follows:

For about fifteen months prior to September 19, 1946 one Ellsworth Meyers was the manufacturer's agent of appellants. Under the terms of their contract said Meyers was to purchase certain chemicals and merchandise from appellants and he was to be their sole and exclusive distributor in certain designated territory.

On or about September 1, 1946 appellee entered into negotiations with said Meyers for the purchase of his contract with appellants. In the course of these negotiations appellee had several conversations with one of the appellants. He was assured the business was a paying business. He says he was informed by appellant the business was worth the price asked by Meyers. Appellee and his wife made a visit to the plant of appellants in Warsaw, Indiana. He had previously examined Meyers' books and the records of the business. He verified those records while in Warsaw. He purchased the business from Meyers for $5800.00. He acquired by this purchase in tangible property a 1937 Chevrolet panel truck worth about $600, approximately $1000 worth of merchandise and some office equipment. At about the time he consummated the purchase from Meyers he entered into a contract with appellants. This contract was in writing and dated September 19, 1946. The pertinent provisions of this contract are as follows:

> "1. Party of the second part hereby agrees to furnish to party of the first part merchandise which party of the first part will sell under his manufacture agency including all chemicals and

merchandise manufactured and produced by the Warsaw Chemical Company of Warsaw, Indiana. Which said merchandise party of the first part agrees to purchase through party of the second part.

"2. Party of the first part hereby agrees to vigorously push the sale within said territory of the merchandise herein stipulated.

"3. Party of the first part is hereby given the exclusive right as the distributor for the sale of the merchandise herein specified.

"4. All sales made by first party shall be purchased at wholesale prices and sold at prices suggested by the manufacturer. The difference between the wholesale price and the selling price constitutes the agent's profit.

"5. First party hereby agrees to sell said merchandise in keeping with the established business principles.

"6. Party of the first part shall be given a complete list of all wholesale prices and suggested retail prices and shall be kept advised as to any changes which may be made or required from time to time.

"7. Party of the first part hereby agrees that all purchases will be made through party of the second part, cash with order.

"8. Party of the first part agrees to pay for his own transportation, meals, advertising, telephone, stationery, and all other expense items connected with the sale of the merchandise herein specified, and receives no allowance from party of the second part, or reimbursements for any expenses.

"9. Party of the first part agrees, however, to fulfill a reasonable quota of sales and obligates himself not to become interested in any competitive industry.

"10. Party of the first part agrees to deal honestly with, and to make no false statements of misrepresentations, and to pay for all sample equipment furnished to him.

"11. Party of the first part agrees to use a prescribed form and receipt in completing a sale, indi-

cating the name of the produce, name of the customer and a correct statement of the terms of the sale.

"12. It is further understood and agreed in case of the termination of the contract, the agent will return promptly to the Company all text books, price lists or confidential information belonging to party of the second part.

. . .

"This constitutes exclusive Distributor and Broker rights in the following territory:

"Indiana and Illinois from U.S. Highway No. 40, excluding Indianapolis and Terre Haute, Indiana, and including East St. Louis, Illinois, South. All of Kentucky, Tennessee and Arkansas.

"It is agreed by the party of the second part that the party of the first part will receive 10% on all orders filled by the party of the second part in the above mentioned territory. In addition, there will be a 2% discount on all C.O.D. orders from the party of the first part.

"The party of the first part retains the right to approve or disapprove of all salesmen or distributors in the above mentioned territory."

At the time he took over the business there were three salesmen working in the territory. Appellee had difficulty in procuring salesmen. In December of 1946 appellee says appellants began to show dissatisfaction with the business he was doing. About October, 1947 appellee wrote appellants and asked permission to sell his business. On or about November 4, 1947 appellants wrote appellee that because he had not produced sufficient business they were going to put another representative in the territory. Sometime prior to this appellee had sold the truck he acquired by the purchase of Meyers' business to one Elwood Newman. The record discloses appellee's purchases for the fourteen-month period from September, 1946 to the cancellation of his contract in November, 1947, amounted to approximately

$4000.00. In the fifteen-month period preceding September, 1946, while Meyers had the contract his purchases amounted to approximately $10,000.

On or about November 8, 1947 one of appellants called Meyers by telephone and arranged to meet him at the Columbia Club in Indianapolis the next day. On November 20, 1947, appellants entered into a contract with Meyers for this territory. During the period appellee's contract was in force one of appellants had, while in Evansville, visited Meyers and his wife several times in their home there. He said he did not discuss their business in these conversations.

Subsequently, appellee brought this action in the Vanderburgh Superior Court against appellants and Meyers. Before the action was tried Meyers died and appellee filed an amended complaint against appellants and Beulah Meyers for damages for wrongfully conspiring to cause a breach of appellee's contract with appellants. The complaint, after averring the facts herein set out regarding the contract, alleges, in part, as follows:

> "6. Elsworth Meyers unlawfully conspired with the defendants Grimm and Wiley to induce them to break their contract with plaintiff, well knowing the terms of the said contract, and as a result of the negotiations between Elsworth Meyers and the defendants Grimm and Wiley, the said territory was assigned to the said Meyers by the said Chemical Company, to the direct and substantial loss of plaintiff, as hereinafter set forth.
>
> "7. The defendants, Grimm and Wiley, in violation of the terms of the said contract, granted the same territory to Elsworth Meyers which they had previously assigned to plaintiff.
>
> "8. Plaintiff has done everything required by him to be done under the terms of the written agreement between him and the said Chemical Company."

Answer of admission and denial under the rules. The venue was changed to the Warrick Circuit Court. Trial to a jury. At the conclusion of appellee's evidence the trial court sustained the motion of Beulah Meyers for a directed verdict in her favor. It overruled a similar motion of appellants. The jury returned a verdict in favor of appellee for $5250.00. Judgment accordingly. The error assigned here is the overruling of appellants' motion for a new trial. This motion contains eighteen specifications. In view of the conclusion we have reached we need consider only the 8th specification, that the trial court erred in refusing to give appellants' peremptory instruction for a verdict in their favor tendered by them at the conclusion of all the evidence.

There is no civil action for conspiracy, but rather the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by ■ the conspiracy itself. 11 Am. Jur., § 45, p. 577; *Union Loan & Trust Company of Union City et al.* v. *Hottmire* (1937), 103 Ind. App. 499, 501, 4 N. E. 2d 58.

The action in tort for inducing another to break a contract presupposes the existence of a valid and enforceable contract. If the contract between appel- ■ lee and appellants was unenforceable by either party for lack of certainty or mutuality, appellee cannot maintain this action. In the case of *International Shoe Company* v. *Lacy* (1944), 114 Ind. App. 641, 646, 647, 53 N. E. 2d 636, the statement of the court in reference to the contract there in question is particularly appropriate to the contract herein. There the court said:

"The agreement, both as pleaded and proven, is entirely silent in many particulars. The appellee did not agree to buy any particular quantity of shoes at any particular price on any stated terms after

the initial purchase. She did not agree to buy her requirements of shoes, nor in fact to make any further purchases of shoes from appellant, nor to continue to purchase or sell shoes for any stated time, nor to handle appellant's shoes exclusively. The appellant, on the other hand, did not agree to continue to sell shoes to appellee for any particular time or on any stated terms or at all. It did not agree to extend exclusive representation on any fixed date, nor could it, for as long as Seulean had in his possession an unsold pair of its shoes previously purchased, he could rightfully continue to sell them. It did not agree to continue exclusive representation once commenced for any certain time, nor under any certain conditions. It may logically be assumed that the parties expected, the one to sell and the other to purchase, shoes, so long as it continued to be convenient, desirable and profitable for them to do so, but they did not bind themselves to continue their business relationship for any specified period of time. It could hardly have been within the contemplation of the parties that appellee should have the exclusive right to retail appellant's shoes forever, whether or not she remained in the shoe business or whether or not she bought any more of appellant's shoes, or if she bought only a few pairs at scattered intervals. Appellant could not compel appellee to stay in business, nor to buy or sell any particular quantity of its shoes or any shoes at all. Appellee could not compel appellant to sell shoes to her at any particular price or on any stated terms, or in fact to sell any shoes at any time, or for any time, nor could either prevent a cancellation of the agreement by the other at any time."

We held that contract unenforceable. To the same effect see: *Jordan* v. *Buick* (1935), 75 F. 2d 447, 449, 450.

We are of the opinion the contract herein is subject to most of the defects referred to in the above cited cases. It was unenforceable because of a lack of mutuality and certainty. Therefore, the trial court should have instructed the jury to find for appellants.

Judgment reversed, with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 96 N. E. 2d 915.

## ON PETITION FOR REHEARING

ROYSE, J.—In his petition for rehearing appellee says that deciding this case on the authority of *International Shoe Company* v. *Lacy* (1944), 114 Ind. App. 641, 53 N. E. 2d 636, we overlooked the very vital fact that the appellee herein gave valuable consideration for the contract or franchise.

In the International Shoe Company case, *supra,* this court in its opinion pointed out that one of the contentions of appellee was:

"That appellant promised her exclusive representation in Indianapolis if she would acquire funds for the purpose from the disposition of other property, and open a store for the sale of Conformal shoes and purchase an order of shoes, and that she did so, thus performing her part of the bargain and rendering appellant's promise obligatory, and avoiding any want of mutuality."

In answering that we said:

"However, appellee did not confine her proof of damages to the expense incurred in opening the store or to any loss in connection with the original purchase, but introduced evidence of the later loss of other profits, and it seems to us that neither party was interested in the mere opening of a store. and that they were not contracting with that in view as the end result to be accomplished, but on the contrary the object under consideration was a marketing agreement for the sale of shoes, and the promise of exclusive representation was an inseparable element of the broader executory agreement which must fall for the lack of mutuality and of certainty."

In the case of *Jordan* v. *Buick Motor Co.* (1935), 75 F. 2d 447, the appellants had contributed $40,000 additional capital in order to secure an exclusive agency to sell and service Buick cars.

In support of his contention appellee cites the cases of *The Pennsylvania Company* v. *Dolan* (1892), 6 Ind. App. 109, 32 N. E. 802; *Cox* v. *The Baltimore and Ohio Southwestern Railroad Co.* (1913), 180 Ind. 495, 103 N. E. 337, and *Toni* v. *Kingan & Co.* (1938), 214 Ind. 611, 15 N. E. 2d 80. Those cases dealt with contracts for life-time jobs in exchange for the execution of a release for a personal injury claim. The agreement involved herein is in the nature of a sales agency agreement. For an interesting discussion of the differences in the two types of contract, see: *E. I. DuPont De Nemours & Co.* v. *Claiborne-Reno Co.* (1933), 64 F. 2d 224; *F. S. Royster Guano Co.* v. *Hall* (1934), 68 F. 2d 533.

We adhere to our original holding in this case.

Petition for rehearing denied.

NOTE.—Reported in 97 N. E. 2d 871.