**Jule BELL, d/b/a Bell Appliance Parts, Plaintiff-Appellant,**

v.

**SPEED QUEEN, a division of McGraw-Edison Co., Defendant-Appellee.**

**No. 17137.**

United States Court of Appeals
Seventh Circuit.

March 11, 1969.

the opinion of this court the memorandum opinion of the district judge which follows in the appendix.

## APPENDIX

Plaintiff, Jule L. Bell d/b/a Bell Appliance Parts brought this action to recover for breach of contract, fraud, and conspiracy. The complaint alleges a contract between plaintiff and defendant's predecessor constituting the plaintiff a wholesale parts distributor of Speed Queen appliance parts, which contract the plaintiff claims to have fulfilled in all respects. It also alleges that defendant's agents represented to the plaintiff that the contract would continue indefinitely when they knew that it would not and that plaintiff relied on those representations to his detriment in that he was induced to deal almost exclusively in defendant's products. Count II of the complaint alleges that defendant and defendant's wholesale dealers entered into a conspiracy to deprive plaintiff of the opportunity to obtain the necessary parts for his business on the same terms as others engaged in the business.

Based on the affidavits submitted by plaintiff and defendant and plaintiff's answers to interrogatories, certain facts are undisputed. The original contract in question was consummated by an exchange of letters between defendant's predecessor and Jule F. Bell, Bell Appliance Shop. Jule F. Bell wrote to Speed Queen expressing a desire to become a wholesale distributor of parts, and Speed Queen replied, consenting to the arrangement and sending him a list of inventory. This exchange took place in 1949 and nothing was said about the duration of the contract. Then on June 1, 1964, plaintiff Jule L. Bell, d/b/a Bell Appliance Parts became the contract purchaser of the wholesale appliance business from Jule F. Bell, d/b/a Bell Appliance Shop.

According to the affidavit of plaintiff, defendant at all times recognized him "as doing business as Bell Appliance

Albert C. Hand, Ronald K. Gehring, Hammond, Ind., for appellant.

Ronald J. Clark, Chicago, Ill., Charles G. Bomberger, Hammond, Ind., Edward R. Johnston, Chicago, Ill., for appellee, Jenner & Block, Chicago, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, and SWYGERT and KERNER, Circuit Judges.

## PER CURIAM.

Jule Bell, doing business as Bell Appliance Parts, brought an action against Speed Queen, a division of McGraw-Edison Company, seeking damages based on breach of contract, fraud, and conspiracy in restraint of trade. The district judge granted summary judgment for Speed Queen. We affirm and adopt as

Parts a part of Bell Appliance Shop." The affidavit further states that defendant induced him to expand his business by representing that the distributorship would continue indefinitely and by not warning him of the impending change in the distributorship policy.

Defendant, however, contends that it knew nothing of the assignment of the business and did not consent thereto. In paragraph 12 of the affidavit of John B. Murray, he states that defendant never received notice of the assignment and it never approved the assignment. The affiant further stated that no agent of the defendant was ever authorized to represent, and to their knowledge no one ever did represent, that the contract would last indefinitely. Further, defendant points out plaintiff's answers to interrogatories gave no definite indication as to what representations were made other than that they took the form of rules as to the adequacy of inventory, etc.

■ As to the assignment of the contract and the confusion over the identity of the parties, the court takes note of the fact that the names of the plaintiff and his assignor are the same except for the middle initial, the names of the business are the same except for the final word, and that based on the admissions of counsel and the letters in the file, both businesses were at all times conducted from the same address. It also notes that plaintiff's affidavit states that Bell Appliance Parts was "a part of Bell Appliance Shop." It therefore finds that there is no substantial issue of material fact as to the notice of assignment, and that defendant did not have actual notice of such assignment at the time of the events in question. The course of dealing relied upon by plaintiff is not sufficient under the circumstances to create an issue of fact in the face of defendant's affidavit.

The cause of plaintiff's termination is clearly set out in defendant's affidavit. It is shown that in the latter part of 1964 Speed Queen reviewed its parts distribution policy and decided to terminate distribution through outlets which were both retail dealers in appliances and wholesale distributors of parts. This decision was based on the legitimate business judgment of defendant and, according to the affidavit, it was reached without consultation or agreement with either the wholesale or wholesale-retail dealers involved. Pursuant to this business decision, the wholesale distributorships of all dealers who were both retailers and wholesale distributors of parts, according to the defendant's records, were terminated. Thus, plaintiff's distributorship, that is, his right to obtain parts at the same discount afforded wholesale distributors, was cancelled.

With regard to the allegation of conspiracy, the defendant's affidavit states that no other distributor was consulted or had any voice in the decision to terminate the distributorship of retailer-wholesalers.

■ Plaintiff cannot recover for breach of contract. First, there is a question as to whether defendant ever contracted with this plaintiff or whether the contract could be validly assigned without the express consent of defendant. But even assuming that there was a valid assignment of the contract, Indiana law provides that a contract providing for continuing performance and which has no termination date, or which provides that it will last indefinitely, is terminable at will by either party. In the recent case of Monon R.R. v. New York Central R.R., 227 N.E.2d 450, 456 (Ind.App.1967) involving the termination of the agreement between two railroads to maintain a joint station, the court said:

> There being no conflict in the evidence, we are of the opinion that under the law applicable to contracts in our state, a contract which contains no specific termination date is terminable by the parties thereto at will.

There, the defendant gave the plaintiff only thirty days notice of a termination of a contract which had lasted more than fifty years. In Miller v. Ortman, 235 Ind. 641, 136 N.E.2d 17, 33 (1956), deal-

ing with a distribution contract, the court said:

> And, as to the termination of appellant's contract as distributor for the "Corporation," it is admitted that there was no formal agreement relative thereto between the "Corporation" and "Midwest" and that any oral agreement between the parties was indefinite as to time and territory.
>
> Therefore, it was within the power of the "Corporation" to terminate the distributorship contract as to *future orders* at its will.

Likewise in International Shoe Co. v. Lacy, 114 Ind.App. 641, 53 N.E.2d 636 (1944) and Grimm v. Baumgart, 121 Ind.App. 626, 96 N.E.2d 915, *rehearing denied*, 97 N.E.2d 871 (1951) the courts said that exclusive agency contracts which contained no date or method of termination were terminable at will, or unenforceable for lack of mutuality. See Grand Lodge Hall Association v. Moore, 224 Ind. 575, 70 N.E.2d 19, 22, 173 A.L.R. 6 (1945), *aff'd per curiam*, 330 U.S. 808, 67 S.Ct. 1088, 91 L.Ed. 1265 (1947); Uniform Commercial Code § 2–309(2). *Annot.*, Distributorship Contract—Termination, 19 A.L.R.3d 196 (1968).

■ The court has examined the cases cited by plaintiff and found them to be inapplicable. At most, they stand for the proposition that a contract may be changed or extended by parol agreement or conduct of the parties. Plaintiff claims that this contract was so changed to provide for indefinite duration. However, even if the contract had expressly provided for an indefinite duration, or for its perpetual continuance, it would have been terminable at will by either party. The court therefore finds that the contract was terminable at will, and that defendant did not breach the contract by so terminating it.

■ There is also the possibility that defendant failed to give plaintiff reasonable notice of the termination or that the agreement was not allowed to last a reasonable time. *Annot.*, Distributorship Contract—Termination, 19 A.L.R. 3d 196, §§ 17–27 (1968). The plaintiff failed to allege such a premise and the facts established before the court show that plaintiff did have a reasonable notice and the contract did last a reasonable time. Plaintiff did not lose the right to sell defendant's parts, or even the right to buy them. He lost the right to purchase them at the most favorable discount. Plaintiff was allowed to obtain approximately six months requirements of parts at the wholesalers' discount after the notice of termination. Under the circumstances, that must be considered equivalent to reasonable notice. Also, the original contract between defendant's and plaintiff's predecessors had lasted twenty years, which is certainly a reasonable time under the circumstances. The court finds that there is no substantial issue of material fact presented by these possible allegations.

■ There is no substantial issue of material fact on the issues of fraud and deceit. Plaintiff claims that defendant represented that the contract would continue indefinitely at a time when it knew it would not. In support of this contention, plaintiff at most shows that defendant gave no notice of termination prior to February of 1965, when the contract was terminated and that until that time defendant had continued to deal with plaintiff as though the contract would continue. Defendant's affidavit shows that the decision to change the method of distribution was not made until near the end of 1964 and plaintiff was notified within a month or slightly more. This decision was not made until after plaintiff purchased the business, so that any representations made prior to that time were not knowingly false. Also, one of the elements of an action for deceit is the damage suffered by plaintiff. The time from when defendant reached its decision to terminate plaintiff's contract to the actual termination was so short, that there was little likelihood of any real damage to defendant arising out of possible misrepresen-

tations. Also, the affidavit of John Murray, submitted by defendant, states that no agent was authorized to represent that the contract would continue indefinitely and that to his knowledge no such representations were made. On the facts of this case, there is no substantial issue of material fact, and the court must find that plaintiff cannot recover on his allegations of fraud.

■ Finally, Count II of the complaint alleges that defendant and its wholesalers conspired to prevent plaintiff from obtaining parts under the same terms as other wholesalers. First, no recovery may be had for a conspiracy to breach a contract or cause a breach of contract, because the contract was terminable at the will of either party. In Grimm v. Baumgart, 121 Ind.App. 626, 96 N.E.2d 915, *rehearing denied*, 97 N. E.2d 871 (1951), involving an alleged conspiracy to breach an exclusive franchise agreement which had no termination date, the court said, at 96 N.E.2d 915, 916:

> There is no civil action for conspiracy, but rather the action is for damages caused by acts committed pursuant to a formed conspiracy rather than the conspiracy itself.

> The action in tort for inducing another to break a contract presupposed the existence of a valid and enforceable contract. If the contract between appellee and appellants was unenforceable by either party for lack of certainty or mutuality, appellee cannot maintain this action.

There, as here, the court held that a contract containing no termination date was terminable at will so there could be no action for breach of contract, or conspiracy to breach a contract, because the termination itself was lawful.

Plaintiff attempts to bring this case within the Indiana statute prohibiting contracts or combinations to prevent artisans and merchants from gaining the goods of their trade. This statute, Burns' Indiana Statutes, § 23–107, provides:

Any person, firm or association of persons who shall make any contract or enter into any agreement or make any combination or enter into any arrangement, directly or indirectly, to induce, procure or prevent any wholesale or retail dealer in or manufacturer of merchandise or of supplies or of material or article intended for trade or used by any mechanic, artisan or dealer in the prosecution of his business from selling such supplies to any dealer or to any mechanic or artisan; and any dealer in or manufacturer of such supplies or material or article of trade or supplies of material to be used by any mechanic, artisan or dealer who shall be a party, directly or indirectly, to any such contract, combination or arrangement; or who shall upon the request of any party to any such contract, combination or arrangement refuse to sell such articles of trade, supplies or materials, or articles sold by any dealer or used by any mechanic, or artisan to any such person or persons who may require them in the prosecution of their said business, for the reason that said dealer, mechanic or artisan is not a member of a combination or association of persons shall be guilty of conspiracy against trade. And all such contracts, agreements, combinations or arrangements shall be void and of no effect whatever in law.

■ The statute has been interpreted to allow an action for conspiracy in restraint of trade. In Knight & Jillison Co. v. Miller, 172 Ind. 27, 87 N.E. 823 (Ind.1909) the court held that a plumbing dealer could maintain an action against two principal suppliers of plumbing supplies who combined with the Merchant Plumbers Association to suppress competition through a variety of contrivances, including a refusal to sell to those who did not join the Association. This case is distinguishable in several respects. It involved a combination of several persons cutting across an entire trade and it was aimed at controlling that entire trade in a class of mer-

chandise. Here, however, even if the defendant had entered into exclusive dealership contracts with its wholesalers which prevented plaintiff from ever competing with them in Speed Queen parts, there would be no actionable conspiracy. Such contracts would not be aimed at controlling trade in the entire class of items, washing machine and dryer parts, but would be a legitimate method of distributing the parts of one manufacturer. Plaintiff has cited no law which says he has a right to be a Speed Queen dealer absent any contract.

In addition, the undisputed facts before the court indicate that there was no combination or agreement among the alleged conspirators. The affidavit of John Murray submitted by defendant states that the decision to cancel the contracts with retailers-wholesalers, in the class to which defendant thought plaintiff belonged, was made without consultation or communication with other dealers. In reply, the most that plaintiff states is that defendant forced the conspiracy on the dealers by its refusal to sell to plaintiff. That is not a conspiracy; it is unilateral action. If an analogy may be drawn to actions based on the federal restraint of trade laws, unilateral action is not actionable. See United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, 7 A.L.R. 443 (1919). Only where the manufacturer has monopoly power in an entire class of items can its unilateral refusal to sell be considered. See, *e. g.*, Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). Moreover, the record here discloses that the plaintiff is still entitled to buy Speed Queen parts. He has only been deprived of purchasing them at the same discount that he previously was allowed. The court finds, therefore, that there is no substantial issue of material fact on Count II of the complaint, and that plaintiff cannot recover thereon.

In summary, the court finds that there is no substantial issue of material fact on any pertinent issue. No action can be maintained on the contract because it was terminable at will. No recovery can be had for fraud because there is nothing to establish any knowingly false representation which was damaging to plaintiff and any such misrepresentation would have been unauthorized. There can be no recovery for conspiracy because the affidavits and admissions show there was no conspiracy of any sort, and such agreement as there may have been between the alleged conspirators was legal. The court, therefore, grants defendant's motion for summary judgment.