THE HOUSE OF CRANE, INC. *v.* H. FENDRICH, INC.

[No. 468A69. Filed April 1, 1970. Rehearing denied April 20, 1970.
Transfer denied July 9, 1970.]

*C. Severin Buschmann* and *Donald A. Schabel,* and *Busch-mann, Carr & Schabel,* of counsel, all of Indianapolis, for appellant.

*Fred P. Bamberger* and *Bamberger, Foreman, Oswald & Hahn,* of counsel, Evansville, and *R. Stanley Lawton, Jim A. O'Neal* and *Ice, Miller, Donadio & Ryan,* of counsel, Indianapolis, for appellee.

SULLIVAN, J.—Appellant, House of Crane, Inc., defendant below (hereinafter referred to as Crane) filed a counterclaim to which appellee H. Fendrich, Inc. (hereinafter referred to as Fendrich) filed a demurrer. The demurrer was sustained to the counterclaim and Crane refused to plead further. Judgment was thereupon entered for plaintiff-appellee upon appellant's counterclaim. The issues framed by Fendrich's complaint against Crane and the answer thereto are not before this Court upon appeal.

Crane's counterclaim against Fendrich in essence alleged that Crane, as well as its predecessor in interest, since 1894, was engaged in the business of wholesale distribution of cigars. Crane distributed a brand of cigar manufactured by Fendrich in 1905 and thereafter, both in the Indianapolis and Evansville areas. Crane, it was alleged, undertook to distribute a second brand manufactured by Fendrich and after many years of concentrated effort in promotion, Crane succeeded in establishing that particular brand as a sales leader. Over a period of many years Fendrich would assign territory to

Crane in which Crane was to have the exclusive sales privilege for Fendrich brand cigars and as of January, 1960, had such exclusive privilege in 74 Indiana counties, 24 Illinois counties and 18 Kentucky counties. The counterclaim further alleged that in consideration of the exclusive sales privilege Crane undertook to: Use its best efforts to achieve the maximum sales of Fendrich's products in said territory; establish and maintain a system of distribution in said territory for Fendrich's products; maintain a sufficient inventory of Fendrich's products to service the trade satisfactorily; assume all credit risks on the accounts to which it sold the Fendrich's products; and, in addition thereto performed many acts of additional consideration over a period of years, e.g., conducting sales promotion contests, consumer sampling, display promotion and advertising consultation. Because Fendrich sold to Crane at a greater discount than to other jobbers, Crane made Fendrich cigars its only major product for distribution.

Crane alleged further that starting in 1960, Fendrich commenced a course of conduct to impair and undermine Crane's effort to promote and sell Fendrich's cigars and permitted and encouraged other distributors within Crane's theretofore exclusive territory. In some instances, it was claimed, Fendrich sold cigars directly to large drugstore chains and other retail outlets. Crane asserted that Fendrich's "unwarranted" actions so damaged the profitability of Crane's business that Crane was forced to notify Fendrich in 1964 that it was discontinuing its wholesale cigar jobbing operation. Crane sought damages against Fendrich for the alleged contract breach in the sum of $750,000.00.

It is to be noted that the counterclaim does not allege that said "contract" was reduced to writing at any time during the continuance of Crane's business relationship with Fendrich. To the contrary, it would appear from the totality of the counterclaim allegations that the relationship between the parties grew gradually, somewhat like Topsy, and that the privilege and responsibilities of the respective parties existed

only insofar as the custom and the course of business conduct over the years permitted.

Fendrich demurred to the counterclaim on the ground that it did not state facts sufficient to constitute a cause of action or a setoff against Fendrich. By reason of our opinion here, we need consider only one basis upon which the demurrer was predicated as set forth in its memorandum attached thereto. Fendrich asserts that the alleged exclusive franchise agreement was invalid and unenforceable for the reason that there was no time fixed during which such agreement was to operate nor were there any provisions for termination of such an agreement.

Appellant Crane readily admits that the agreement did not specify a definite time or prescribe conditions which would determine the duration of the contract but argues that the absence of such specification does not render the agreement terminable by either party at will. In support thereof, appellant cites Federal cases from the Northern District of California and from the Third, Fourth & Ninth Circuits in addition to cases from Washington and North Carolina. Such cases are of no persuasive effect, however, in the light of a case decided by the 7th Circuit Court of Appeals, which case was reported subsequent to the full briefing of this appeal but prior to the oral argument held.

We deem the per curiam opinion in *Bell* v. *Speed Queen* (7th Cir. 1969), 407 F. 2d 1022, to correctly state the law of Indiana in this matter. It would serve no useful purpose to belabor the rationale of the *Bell* case or to exhaustively distinguish those authorities relied upon by Crane. The following language from the holding in the *Bell* case is, we think, dispositive of the question before us:

"Plaintiff cannot recover for breach of contract. First, there is a question as to whether defendant ever contracted with this plaintiff or whether the contract could be validly assigned without the express consent of defendant. But even assuming that there was a valid assignment of the con-

tract, Indiana law provides that a contract providing for continuing performance and which has no termination date, or which provides that it will last indefinitely, is terminable at will by either party. In the recent case of *Monon R.R.* v. *New York Central R.R.* [10 Ind. Dec. 644], 227 N. E. 2d 450, 456, 141 Ind. App. 277 (1967) involving the termination of the agreement between two railroads to maintain a joint station, the court said:

'There being no conflict in the evidence, we are of the opinion that under the law applicable to contracts in our state, a contract which contains no specific termination date is terminable by the parties thereto at will.'

There, the defendant gave the plaintiff only thirty days notice of a termination of a contract which had lasted more than fifty years. In *Miller* v. *Ortman* (1956), 235 Ind. 641, 136 N. E. 2d 17, 33, dealing with a distribution contract, the court said:

'And, as to the termination of appellant's contract as distributor for the "Corporation," it is admitted that there was no formal agreement relative thereto between the "Corporation" and "Midwest" and that any oral agreement between the parties was indefinite as to time and territory.

'Therefore, it was within the power of the "Corporation" to terminate the distributorship contract as to *future orders* at its will.'

Likewise in *International Shoe Co.* v. *Lacy* (1944), 114 Ind. App. 641, 53 N. E. 2d 636, and *Grimn* v. *Baumgart*, 121 Ind. App. 626, 96 N. E. 2d 915, *rehearing denied,* 97 N. E. 2d 871 (1951) the courts said that exclusive agency contracts which contained no date or method of termination were terminable at will, or unenforceable for lack of mutuality. See *Grand Lodge Hall Associates* v. *Moore* (1945), 224 Ind. 575, 70 N. E. 2d 19, 22, *aff'd per curiam,* 330 U. S. 808 (1947) ; Uniform Commercial Code § 2-309 (2) [Burns' § 19-2-309 (2)]. *Annot.,* Distributorship Contract— Termination, 19 A.L.R. 3d 196 (1968).

"The court has examined the cases cited by plaintiff and found them to be inapplicable. At most, they stand for the proposition that a contract may be changed or extended by parole agreement or conduct of the parties. Plaintiff claims that this contract was so changed to provide for indefinite duration. However, even if the contract had expressly provided for an indefinite duration, or for its perpetual con-

tinuance, it would have been terminable at will by either party. The court therefore finds that the contract was terminable at will, and that defendant did not breach the contract by so terminating it." (16 Ind. Dec. 677, 679, 680)

We now, therefore, affirm the decision and judgment of the court below and assess the costs hereof against appellant House of Crane, Inc.

Lowdermilk, C.J., Carson and Cooper, JJ., concur.

NOTE.—Reported in 256 N. E. 2d 578.