RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0346-MR

GREGORY SETH THOMAS                                                APPELLANT

v.       APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE JENNIFER L. HENDRICKS, JUDGE
ACTION NO. 22-CI-00370

LOUVINIA MAE THOMAS                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE:  Gregory Thomas (Appellant) appeals from Amended Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage of the Daviess Circuit Court, Family Court Division.  He argues that the circuit court erred in its interpretation of a prenuptial agreement (the Agreement), and in failing to find it unconscionable and unenforceable.  We find no error and affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

Prior to their marriage in Vanderburgh County, Indiana on March 22, 2014, Appellant and Louvinia Mae Thomas (Appellee) executed a Prenuptial Agreement. The Agreement provided in relevant part that:

1 – it shall be governed by the laws of the State of Indiana;

2 – the parties agree that it is not unconscionable;

3 – in the event of the parties' separation, Louvinia shall be entitled to monthly support in the amount of $2,000 indefinitely; and,

4 – upon the parties' separation, "[a]ll property and assets, joint or separate, will belong to Louvinia in case of separation due to any type [of] infidelity on the part of Greg." For purposes of this provision, infidelity included, but was not limited to, physical and verbal infidelity, pictures, text messages, pornography (unless viewed by the parties together), and email.

On February 1, 2021, and during the pendency of the marriage, the parties entered a Postnuptial Amendment (the Amendment) amending the Agreement. The Amendment changed the definition of infidelity to include,

any type of contact with any female whether via phone, text, email, while playing video games or in person. Attending any type of social gatherings including eating out and any physical contact of any type including hugging, kissing, sexual talk or sexual touching of any kind shall also be considered infidelity and prohibited under this agreement. An exception to the terms described above shall be communication with females solely regarding work related topics during the normal

-2-

course of employment. In addition, Greg shall not download a second phone number or obtain a second phone line or any new email accounts without the prior authorization and disclosure to Louvinia. Greg also agrees to provide Louvinia with the passwords to his phone and electronic accounts including email, keyless entry to his car, laptop, etc. at all times. Upon the refusal of Greg to comply, the terms of the separation as referenced above will go into effect. No time limit or distance between the couple will excuse Greg from the provisions of this document including death or remarriage.

The Amendment also stated that in the event of separation due to Greg's infidelity, Louvinia shall be entitled to "[p]ayment of $2,000 per month from Greg to Louvinia payable on the 1st of each month indefinitely." This $2,000 sum was in addition to the $2,000 "support" owned Appellee in Paragraph 15 of the Agreement.

According to the record, Appellant engaged in infidelity during the marriage. Appellee then filed the instant action on April 5, 2022, seeking dissolution of marriage. When Appellee sought to enforce the Agreement and Amendment, Appellant argued that they were unconscionable and unenforceable. Appellee asserted that the agreements were drafted by Appellant, who was better educated, had more assets, and was in a far better bargaining position than her. In contrast, Appellant maintained that the terms of the agreements were so one-sided in favor of Appellee as to be unconscionable.

On November 10, 2022, the parties entered into an agreed order providing that Appellant would pay the parties' mortgage and $500 per month in temporary maintenance to Appellee, pending resolution of the remaining issues.[1] The circuit court then conducted a series of hearings, resulting in rulings that 1) the Agreement and Amendment were enforceable and not unconscionable; and, 2) that Appellant's infidelity was a cause of the parties' separation, thereby invoking the terms of the Agreement and Amendment.  Finally, on February 20, 2025, the circuit court entered a final and appealable order adjudicating all remaining issues. An amended final order was entered on February 21, 2025, and this appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant argues that the circuit court committed reversible error in its interpretation and enforcement of the Agreement and Amendment.  Appellant first takes issue with the circuit court's enforcement of language set out in the Agreement and Amendment which provides that upon separation based on Appellant's infidelity, Appellee shall be entitled to monthly support in the amount of $2,000 "indefinitely."  Appellant maintains that the circuit court improperly interpreted the word "indefinitely" to mean "forever."  He also asserts that Indiana

---

[1] Appellant filed an interlocutory appeal on August 2, 2024.  That appeal was dismissed by order of this Court on December 4, 2024, as not ripe for appellate review.

law does not allow for the enforcement of such contracts. He argues that if the parties intended for monthly support to last forever, they could have clearly stated this in the Agreement—but they did not. He contends that even if "indefinitely" does mean "forever," Indiana law does not allow for the enforcement of such contracts. He requests an opinion reversing and remanding the matter to the Daviess Circuit Court, Family Court Division on this issue.

We first note that the Agreement was executed in Indiana while the parties resided there and provides that it shall be governed by the laws of Indiana. We may apply the laws of another state as long as they do not violate Kentucky public policy. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 880 (Ky. 2013). Therefore, we will apply the laws of Indiana to the issues before us, while recognizing that these laws are enforceable only so long as they do not contravene Kentucky public policy. *Id.*

We will examine the Agreement and Amendment under general principles of contract law. *Rider v. Rider*, 669 N.E.2d 160, 162 (Ind. 1996). Where there is no ambiguity, Indiana case law requires contracts to be "enforced as written." *U.S. Automatic Sprinkler Corporation v. Erie Insurance Exchange*, 204 N.E.3d 215, 223 (Ind. 2023). The courts are constrained by the four corners of the contract, without adding or subtracting language. *Id.*

*Perrill v. Perrill*, 126 N.E.3d 834 (Ind. Ct. App. 2019) provides

guidance in the interpretation of prenuptial agreements. It states:

> Generally, courts favor premarital agreements, and our Supreme Court has consistently held that [antenuptial] agreements, so long as they are entered into freely and without fraud, duress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable, are valid and binding. Antenuptial agreements are favored by the law and will be liberally construed to effect, so far as possible, the parties' intentions. Standard principles regarding contract formation and interpretation apply to premarital agreements. The party urging the validity of a contract bears the onus of proving its existence.

> A premarital agreement between parties contemplating marriage must be in writing and signed by both parties. The agreement is enforceable without consideration. It is fundamental that a contract is formed by the exchange of an offer and acceptance between contracting parties. The parties to a contract have the right to define their mutual rights and obligations, and a court may not make a new contract for the parties or supply missing terms under the guise of construing a contract.

> The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the transaction. There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. Only reasonable certainty is necessary; absolute certainty in all terms is not required. Instead, [o]nly essential terms need to be included to render a contract enforceable. An agreement required to be in writing must completely contain the essential terms without resort to parol evidence in order to be enforceable.

The court must read all of the contractual provisions as a whole to accept an interpretation that harmonizes the contract's words and phrases and gives effect to the parties' intentions as established at the time they entered the contract. If the language of the agreement is unambiguous, the intent of the parties must be determined from the four corners of the document. The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms.

*Perrill*, 126 N.E.3d at 840–41 (internal quotation marks and citations omitted).

Thus, 1) Indiana courts favor premarital agreements; 2) the Indiana Supreme Court has consistently held that absent fraud, duress, unconscionability, etc., premarital agreements are enforceable; 3) these agreements will be liberally construed to give effect to the parties' intentions; and, 4) they are enforceable without consideration. *Id.*

In addition, Indiana Code 31-11-3-8 addresses the enforceability of what it refers to as premarital agreements. It provides at Sec. 8. (a) that "[a] premarital agreement is not enforceable if a party against whom enforcement is sought proves that: (1) the party did not execute the agreement voluntarily; or (2) the agreement was unconscionable when the agreement was executed." For purposes of this provision, relevant factors in determining unconscionability include the "economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made[.]" *Fetters v. Fetters*, 26 N.E.3d 1016, 1021 (Ind. Ct. App. 2015).

-7-

Applying these principles to the matter before us, we conclude that Appellant and Appellee entered into an enforceable contract. The Agreement states that it was voluntarily entered into and Appellant has offered no evidence that it was executed under the influence of fraud or duress. Testimony was adduced below that the parties contemplated the Agreement for months before executing it. The Agreement and Amendment contain an offer, acceptance, consideration, and a meeting of the minds on all essential elements or terms of the transaction. Appellant and Appellee "have the right to define their mutual rights and obligations, and [we] may not make a new contract for the parties . . . under the guise of construing a contract." *Perrill*, 126 N.E.3d at 840 (internal quotation marks and citation omitted). The Agreement states that the parties were availed of counsel if they so chose and Appellant engaged counsel to draft the Amendment.

Next, we turn to Appellant's argument that the indefinite duration of his obligation renders the Agreement unenforceable. He asserts that the circuit court improperly interpreted the word "indefinite" to mean "forever." He also argues that Indiana courts do not enforce indefinite contracts. Appellant directs our attention to *House of Crane Inc. v. Fendrich, Inc.*, 146 Ind. App. 478, 482–83, 256 N.E.2d 578, 579–80 (1970) (quoting *Bell v. Spend Queen*, 407 F.2d 1022, 1024–25 (7th Cir. 1969)), which he argues stands for the proposition that indefinite contracts are terminable at will. As noted by the circuit court, however, *House of*

*Crane* was not a written contract, and *Bell* is distinguishable on its facts. Further, neither case dealt with prenuptial agreements or dissolution.

We find case law directly addressing dissolution proceedings such as *Deel v. Deel*, 909 N.E.2d 1028, 1034 (Ind. Ct. App. 2009) and *In re Marriage of Buntin*, 496 N.E.2d 1351, 1354 (Ind. Ct. App. 1986) to be more persuasive. In each case, the court found that payments for an indefinite period of time could be considered in determining whether the distribution constituted maintenance or a property settlement. Neither found that indefinite payments raised issues of conscionability or enforceability.

Further, Indiana trial courts find that agreements between divorcing parties give them more flexibility in their terms than those that could be ordered by the courts. *See Brinkmann v. Brinkmann*, 772 N.E.2d 441, 445 (Ind. Ct. App. 2002). And finally, divorcing parties may agree to maintenance terms which would otherwise violate public policy, so long as those terms were freely bargained for. *Kizziah v. Kizziah*, 651 N.E.2d 297, 298 (Ind. Ct. App. 1995). Such was the case at hand, as Appellant bargained for generous terms in favor of Appellee in return for Appellee entering into and remaining in a marriage despite Appellant's infidelity. In sum, we find no basis for concluding that the parties' usage of the term "indefinite" to describe Appellant's obligation renders the agreement unconscionable or unenforceable.

Appellant goes on to argue that the Agreement should be found unconscionable because of the mechanism which triggered its terms. Specifically, Appellant takes issue with the definition of infidelity set out in the Amendment, which he contends that "no sensible person, not under delusion, duress or distress would accept." *See Rider*, 669 N.E.2d at 162. Appellant is essentially arguing that he was delusional or under duress when he executed the Agreement and Amendment, as no rational person would have a prenuptial agreement triggered by the broadly-worded definition of infidelity set out in the Amendment. He also asserts that "[n]o reasonable person would sign such an agreement thinking it would ever be enforceable." Thus, Appellant seems to argue that he never believed the Agreement and Amendment were enforceable *ab initio*.

The definition of infidelity set out in the Amendment is expansive. This definition, however, resulted from Appellant's attempt to hold the marriage together after his marital infidelity. The Amendment setting out the definition of infidelity was drafted by Appellant and his legal counsel. Based on the totality of record, as well as Ind. Code 31-11-3-8 and the supportive case law, we do not conclude that the expansive definition of infidelity set out in the Amendment rendered the Agreement unconscionable.

Lastly, Appellant briefly argues that the Agreement is unconscionable based on the amount of the award to Appellee. After recounting the type and

nature of the assets and payments owed to Appellee under the Agreement, Appellant asserts that his income and assets are insufficient to satisfy this obligation. On this basis, he maintains that the Agreement and Amendment are unconscionable.

In examining this issue below, the circuit court engaged in a comprehensive analysis of the parties' incomes, assets, expenses, and debts. This included consideration of the parties' retirement and bank accounts; vehicles; cash; precious metals; jewelry; coins; the marital residence; credit card debt; and, a medical bill and an orthodontist bill. After careful review, we find no basis for concluding that the circuit court's disposition of these assets and debts in accordance with the terms of the Agreement was unconscionable or otherwise erroneous. This is the disposition agreed to by Appellant when he entered into the Agreement and Amendment, the latter of which was accomplished with the benefit of counsel.

Again, Indiana courts favor premarital agreements, and they should be liberally construed to give effect to the parties' intent. *Perrill*, 126 N.E.3d at 840–41. In the matter before us, we know the parties' intent as to Appellant's obligation to Appellee in the event of infidelity, as it was memorialized in the Agreement and Amendment. Further, a trial court's rulings are presumed to be correct, and the burden rests with the appellant to overcome this presumption.

*Stuckert v. Keller*, 430 S.W.2d 773, 777 (Ky. 1968).  Appellant has not met this burden.

## **CONCLUSION**

For these reasons, we affirm the Amended Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage of the Daviess Circuit Court, Family Court Division.

ALL CONCUR.

BRIEF FOR APPELLANT:

Evan Taylor
Owensboro, Kentucky

BRIEF FOR APPELLEE:

Thomas E. Banks, II
William B. McGee
Louisville, Kentucky