MONON RAILROAD, A CORPORATION *v.* NEW YORK CENTRAL
RAILROAD COMPANY, A CORPORATION.

[No. 20,601. Filed June 23, 1967. No Petition for Rehearing filed.]

*M. Elliot Belshaw,* of Hammond, and *James H. Hawk,* of
Chicago, Illinois, for appellant.

*Richard O. Olson,* of Chicago, Illinois, *Owen W. Crumpacker,
Harold Abrahamson, Kenneth D. Reed* and *Richard P. Komyatte,* all of Hammond, for appellee.

COOPER, J.—The Appellant herein, Monon Railroad, filed
an action against the Appellee, New York Central Railroad

Company, for alleged damages for money due under a contract dated July 7, 1904, between the parties' predecessors. After the proper issues were closed, the cause was submitted to a jury for trial. At the conclusion of the Appellant's evidence, the trial judge, upon the Appellee's Motion, directed a verdict for the Appellee. It appears that the trial judge rendered judgment upon the jury's verdict in favor of the Appellee.

The Appellant assigns as error the overruling of his motion for a new trial. His motion avers in substance:

(1) The verdict is not sustained by sufficient evidence, and

(2) The verdict was contrary to law, and other specifications of alleged error, which we will consider under the foregoing second specification.

The Appellant's complaint in the record and now before us, omitting the caption and signature, reads as follows:

"Comes now the plaintiff, Monon Railroad, by its attorneys and complains of the defendant, and for cause of action states as follows:

"1. The Plaintiff, Monon Railroad, hereinafter sometimes referred to as 'Monon' is a railroad corporation incorporated and doing business under and by virtue of the laws of the State of Indiana, in and through the Town of Shelby, County of Lake, the State of Indiana.

"2. The defendant, New York Central Railroad Company, hereinafter sometimes referred to as 'Central,' is a railroad corporation incorporated under and by virtue of the laws of the State of New York and doing business in Indiana under and by virtue of the laws of the State of Indiana, and runs through the Town of Shelby, the County of Lake, the State of Indiana.

"3. That the plaintiff and the defendant have heretofore entered into agreements with one another, by their respective corporate predecessors and between themselves as they appear on the said documents as they are referred to below, to-wit:

"a. The defendant by its corporate predecessor, the Indiana, Illinois and Iowa Railroad Company, and the plaintiff by its corporate predecessor, the Louisville, New Albany & Chicago Railway Company, entered into an agreement on the 25th day of October, 1882. The subject

of this agreement was the terms under which the defendant's corporate predecessor was allowed to cross plaintiff's corporate predecessor's line of railroad in Shelby, Lake County, State of Indiana. The said agreement is marked 'Exhibit A,' and attached hereto and hereby made a part hereof.

"b. The defendant by its corporate predecessor, Indiana, Illinois & Iowa Railroad Company, and the plaintiff by its corporate predecessor, the Chicago, Indianapolis and Louisville Railway Company, entered into a new agreement on the 7th day of July, 1904. The subject of this contract was again the manner in which the defendant's corporate predecessor was to be allowed to maintain its tracks across plaintiff's corporate predecessor's line of railroad in Shelby, Lake County, State of Indiana. Under this agreement, both parties were to share in the cost of erection and maintenance of a depot and other crossing facilities to insure the safety of the crossing and otherwise for the convenience of the parties respectively, the costs of which were to be shared equally between the two parties. Under this agreement both parties were to pay equal proportions of the pay rolls of employees at the joint station and all supplies for the maintenance and operation of the said depot and interlocking plant were to be furnished by the Chicago, Indianapolis and Louiseville (sic) Railway Company, one half of the same to be billed against the Indiana, Illinois & Iowa Railway Company periodically. A copy of the said agreement is attached hereto and hereby made a part hereof and referred to as 'Exhibit B'.

"c. The defendant by its corporate predecessor, Chicago, Indiana & Southern Railroad Company and plaintiff by its corporate predecessor, Chicago, Indianapolis and Louisville Railway Company, entered into an agreement on the 18th day of November, 1911, the same being expressly declared by its terms to be supplemental to the agreement of the 7th day of July, 1904. This agreement affirmed the 1904 agreement and declared the same to be still in 'full force and effect' except for the modifications made, none of which affect the said joint station. A copy of the said agreement is attached hereto and hereby made a part hereof and referred to as 'Exhibit C'.

"d. The plaintiff by its corporate predecessor, Chicago, Indianapolis & Louisville Railway Company, agreed by letter of December 21, 1918, to Central to assume all the costs and expenses of the joint station at Shelby, Indiana, and to bill half of the same to Central whenever the same

should accrue. A copy of the same is attached hereto and hereby made a part hereof and referred to as 'Exhibit D'.

"e. The plaintiff by its corporate predecessor, Chicago, Indianapolis & Louisville Railway Company, subsequently affirmed the said agreement set out in paragraph 3 (d) hereof by letter of January 10, 1922, a copy of which is attached hereto and hereby made a part hereof and marked 'Exhibit E'.

"f. Central and Monon entered into an agreement dated the 18th day of July, 1961. This agreement modified the interlocking agreement existing at the time of the agreement. The said agreement also expressly recognized the agreements referred to herein as 'A', 'B', and 'C' as being in full force and effect. A copy of the same is attached hereto and hereby made a part hereof and referred to as 'Exhibit F'.

"4. None of the agreements set out in paragraph 3 herein have modified Central's obligation to pay for half the joint station costs and expenses of maintenance wages, etc.

"5. The plaintiff and the defendant shared the costs until October, 1961, during which month Central notified Monon it would, effective November 1, 1961, 'no longer bear any portion of the agency expense at Shelby.'

"6. Between November 1, 1961, and October 7, 1964, Monon continued to perate (sic) the said joint station, closing on October 9, 1964, after obtaining permission to do so by action before the Public Service Commission of Indiana.

"7. Between November 1, 1961, and October 7, 1964, Monon held the joint station open and remained ready willing and able to provide depot facilities for any and all services required or desired by Central. And Monon has at all times performed all of its other duties under the agreements.

"8. Central continued to use the said joint station from and after November 1, 1961, until October 9, 1964, for its railroad purposes in that it maintained operative railroad communications equipment in the said joint station which said equipment was never disconnected.

"9. Central has not paid any bill rendered by Monon for joint station expenses which accrued after November 1, 1961, and which were rendered on a monthly basis within a reasonable time from their accrual for the period between November 1, 1961 and October 9, 1964. Central has, in fact, refused to pay the same upon each billing.

"10. Central has continued to pay all other bills rendered under the agreements referred to as Exhibits 'A', 'B', 'C', 'D', 'E', and 'F' and continued to use the rail crossings and protection thereof which is covered by the said agreements also.

"11. Central is indebted to Monon for and on account of the facts herein set out in that Monon has provided a joint facility and Central has used the same and refused to pay its portion pertaining to the maintenance and expenses of the joint station at Shelby, Lake County, State of Indiana.

"12. The amount for which Central is indebted to Monon, as hereinafter set out in 'Exhibit G', which is hereby made a part hereof, the same being schedule of the bills rendered by Monon to Central for the period between November 1, 1961 and October 9, 1964, is Ten Thousand Five Hundred Twelve and 86/100 Dollars ($10,512.86).

"WHEREFORE, the plaintiff prays that it be given judgment against the defendant in the amount of Ten Thousand Five Hundred Twelve and 86/100 Dollars ($10,512.86) and all and other relief proper in the premises."

The Appellee's Answer, omitting the caption and signature reads as follows:

"Comes now defendant, New York Central Railroad Company, by its attorneys, and for answer to plaintiff's complaint alleges and states as follows:

"1. That the defendant admits the allegations of plaintiff's rhetorical paragraph No. one (1) except for the allegation that the plaintiff is doing business in and through the Town of Shelby, in Lake County, Indiana, as the defendant is without knowledge as to this allegation and must therefore, deny same.

"2. That the defendant admits the allegations of plaintiff's rhetorical paragraph No. two (2), except for the allegation that the defendant is incorporated under and by virtue of the laws of the State of New York, since the defendant is incorporated under and by virtue of the laws of the State of Delaware.

"3. That the defendant denies the allegations of plaintiff's rhetorical paragraph No. three (3). That defendant specifically denies the allegations of plaintiff's sub-para-

graphs (a), (b), (c), (d), (e), and (f), contained in rhetorical paragraph No. three (3).

"4. That the defendant denies the allegations of plaintiff's rhetorical paragraph No. five (5). [sic]

"5. That the defendant admits the allegations of plaintiff's rhetorical paragraph No. five (5).

"6. That the defendant is without knowledge as to the allegations of plaintiff's rhetorical paragraph No. six (6) and, therefore, must deny the allegations of said rhetorical paragraph No. six (6).

"7. That the defendant denies the allegations of plaintiff's rhetorical paragraph No. seven (7).

"8. That the defendant denies the allegations of plaintiff's rhetorical paragraph No. eight (8).

"9. That the defendant admits the allegations of plaintiff's rhetorical paragraph No. nine (9).

"10 That the defendant denies the allegations of plaintiff's rhetorical paragraph No. ten (10).

"11. That the defendant denies the allegations of plaintiff's rhetorical paragraph No. eleven (11).

"12. That the defendant denies the allegations of plaintiff's rhetorical paragraph No. twelve (12).

"WHEREFORE, defendant prays that plaintiff take nothing by its complaint; for its costs herein expended; and for all other further and proper relief in the premises."

The evidence in the record reveals that the agreement of July 7, 1904, between the parties reads as follows:

"THIS AGREEMENT made in duplicate this 7th day of July, 1904, between the CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY, party of the first part, and the INDIANA, ILLINOIS & IOWA RAILROAD COMPANY, party of the second part, WITNESSETH:

"I.

"That in order to fully protect each of the parties hereto, from the dangers incident to the operation of trains, engines and cars at grade at the crossing at Shelby, Indiana, where the tracks of the first and second party intersect, it is agreed that the first party shall erect, maintain and operate at said crossing a standard interlocking device, which device and plan of interlocing shall be submitted to and approved

by the Auditor of State. Said first party shall also erect and maintain a combined freight and passenger station at Shelby, for the joint use of both parties hereto; said depot to be so arranged that the levers for operating said interlocking device may be placed in the office in the depot.

## "II.

"The first party agrees to construct such interlocker and depot at said crossing and pay all bills for the construction thereof, but such expense shall be borne equally by the parties hereto, said first party billing against said second party from time to time, for one-half of the actual cost of such construction, and said second party agrees to make prompt payment thereof.

## "III.

"The first party agrees to maintain said depot and maintain and operate such interlocking plant, employing the necessary agents. These agents will be discharged by said first party for cause, upon the written request of the managing officer of the second party. The maintenance and operation of said depot and interlocking system shall be at the joint and equal expense of the respective parties hereto. But the employees shall be carried on the pay rolls of the respective parties hereto for one-half of the amount of their salary, and all the supplies necessary for the maintenance and operation of said depot and interlocking plant shall be furnished by the said first party, and said first party shall at the end of each month bill against said second party for one-half of the expense thereof, which bill said second party agrees to promptly pay to said first party.

## "IV.

"The parties hereto agree that each will rearrange its respective tracks so that no switches shall be located between said crossing and the home signals.

## "V.

"The plan of interlocking said crossing shall embrace all tracks of both parties now constructed, except switch tracks within the points hereinbefore described, and each party hereto shall have the right hereafter to construct such additional tracks as may be deemed necessary, but the party constructing such track or tracks hereafter, shall bear the

entire cost and expense of extending such interlocking system so as to embrace the track or tracks hereafter put in.

## "VI.

"In the operation of said interlocking system it is agreed that the persons connected in and about said interlocking plant, shall be the joint agents and employes of both of the parties hereto, except in cases where said agents or employes shall be acting for and on behalf exclusively of one of the parties hereto, in which case they shall be deemed and taken as the sole employes of the party for whom they are acting at the time. And in case of loss or damage by reason of the negligence of the persons employed in such operation, such loss shall be borne by the party hereto whose sole agents they are at the time of such neglect.

## "VII.

"Trains of the first party of the same class as those of the second party, shall have priority of right to the use of said crossing. Single engines shall be treated the same as trains.

## "VIII.

"It is agreed that the contract of date October 25th, 1882, by and between the Louisville, New Albany & Chicago Railway Company and the second party hereto, shall be and remain in force except as the same is changed by the terms hereof.

"IN TESTIMONY Whereof, the parties hereto have caused these presents to be executed the day and year first above written."

The Appellant's charge in the Motion for New Trial that the verdict is not sustained by sufficient evidence, presents nothing for our consideration for the reason that the verdict was negative to the Appellant, who had the burden of proof. *Cottongim et al., v. Congleton, et al.,* 245 Ind. 387, 392, 199 N. E. 2d, 96, 99; West's Indiana Law Practice (1967), Sec. 1768, p. 528 and authorities cited; West's Indiana Law Encyclopedia, Vol. 1, *Appeals,* Sec. 175, p. 665, and authorities cited.

However, the appellant may, and does assert that the verdict was contrary to law and it thus presents that question of

whether the Appellant was entitled, under the evidence and the law applicable thereto, to the relief which was denied it by the directed verdict. *Hinds, Executor of Estate of Sickels, Deceased,* v. *McNair, et al.,* (1955), 235 Ind. 34, 41, 129 N. E. 2d, 553; *Wilson, Admx.* v. *Rollins, et al.,* (1938), 214 Ind. 155, 158, 14 N. E. 2d, 905.

This brings us to the pertinent question presented to us by this appeal: Did the trial judge err in sustaining the Motion for a peremptory instruction in favor of the Appellee, at the close of the Appellant's evidence? If that action was erroneous, the cause should be reversed. Otherwise, we must affirm.

The general rule of law applicable stating when a trial court may properly give a trial jury a peremptory instruction to find for the defendant is found in the case of *Whitaker, Admr. of the Estate of Sayler, deceased,* v. *Borntrager* (1954), 233 Ind. 678, 680, 122 N. E. 2d, 734, wherein our Supreme Court stated:

"When there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. *Jackson Hill Coal and Coke Co.* v. *Bales, et al.,* (1915) 183 Ind. 276, 279, 108 N. E. 692. *Slinkard* v. *Babb* (1953) 125 Ind. App. 76, and cases there cited. 112 N. E. 2d, 876, 878; *Gregory* v. *The C. C. C. and I. R. R. Co.,* 112 Ind. 385, 388, 14 N. E. 2d, 228.

"When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. *Jackson Hill Coal and Coke Co.* v. *Bales et al.* (1915) 183 Ind. 276, 280, *supra; American Food Co.* v. *Halstead,* (1905) 165 Ind. 633, 638, 76 N. E. 251. See also *Heath* v. *Sheetz* (1905) 164 Ind. 665, p. 667, 74 N. E. 505. *Slinkard* v. *Babb* (1953) 124 Ind. App. 76, and cases there cited; 112 N. E. 2d 876, 878, *supra.*

"In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury

might reasonably draw. *Orey* v. *Mutual Life Insurance Company of New York* (1939) 215 Ind. 305, 306, 19 N. E. 2d, 547; *Holtz* v. *Elgin, etc. Ry. Co.* (1951) 121 Ind. App. 175, 98 N. E. 2d, 245; *Chacker* v. *Marcus* (1949) 119 Ind. App. 672, 674, 86 N. E. 2d, 708, 89 N. E. 2d, 455; *Balzer* v. *Waring* (1911), 176 Ind. 585, 594, 95 N. E. 257, 48 L. R. A. N. S. 834."

It appears from the record now before us that the issue below and what we are called upon to decide is: Did the Appellant plead and offer evidence of probative value, proving or tending to prove a cause of action against the Appellee so as to make a prima facie case to go to the jury.

In reviewing the evidence in the record it reveals, in substance, that the parties herein entered into a contract in July, 1904, and that the contract was altered and changed by the parties, said change to become effective on January 1, 1919; thereafter the parties continued under the contract until October, 1961, at which time the New York Central Railroad Company notified the Monon Railroad that effective November 1, 1961, New York Central would no longer bear any portion of the agency expense at Shelby, Indiana. The evidence also shows that after November 1, 1961, the New York Central Railroad Company no longer used the facilities of the Monon Railroad and did not pay any sum to the Monon Railroad after said date. Monon Railroad closed the station on October 9, 1964.

There being no conflict in the evidence, we are of the opinion that under the law applicable to contracts in our state, a contract which contains no specific termination date is terminable by the parties thereto at will. See West's Indiana Law Encyclopedia, *Contracts*, Vol. 6, Sec. 164, p. 209, wherein we find the following statement: "A contract containing no specific termination date is terminable at will."

The Appellant is in error in inferring that a contract without a specific termination date is perpetual. In the case of *Grand Lodge Hall Assn. I. O. O. F. et al.*, v. *Moore, Auditor,*

*et al.,* (1946), 224 Ind. 575, 70 N. E. 2d, 19, beginning on page 583, we find the following applicable statement of law:

"From this premise the argument is made that because the exemption contained in Sec. 9 is not limited in time it therefore must also be deemed to be perpetual. Against this view, is the principle that a contract containing no specific termination date is terminable at will and the further rule that where the parties fix no time for the performance or discharge of obligations created by the contract they are assumed to have had in mind a reasonable time."

We cannot say as a matter of law that the period of time from July, 1904, to November 1, 1961, was not a reasonable period of time.

The following cases also recognize the basic theory of law, although not directly involved, that the termination of a contract which contains no specific time for termination may be terminated by either party at will. *Grimm et al.,* v. *Baumgart* (1951), 121 Ind. App. 626, 633, 96 N. E. 2d, 915; *Int'l Shoe Co.* v. *Lacy* (1944), 114 Ind. App. 641, 647, 53 N. E. 2d, 636; *Miller Etc.* v. *Ortman, Etc. et al.,* (1956), 235 Ind. 641, 136 N. E. 2d 17.

It appears from the Appellant's brief that it is attempting to raise new issues before this court that were not before the trial court. Such new issues present nothing for our consideration. See West's Indiana Law Encyclopedia, Vol. 2, *Appeals,* Sec. 497, p. 392.

It is affirmatively apparent from the Appellant's complaint, hereinbefore set out, that the Appellee was liable to the Appellant for the continued use of the Shelby station from the time of the termination of the contract until the Appellant closed the station in 1964.

We have reviewed and considered the evidence in the record most carefully and we find nothing in the testimony or evidence quoted or referred to by the Appellant which sustains the material and pertinent allegations of its complaint. There appears no evidence whatsoever, nor any reasonable

inference, in support of said allegation contained in Appellant's rhetorical paragraph No. 8; as a matter of fact, the Appellant admitted this in oral argument. Furthermore, in our opinion, Appellant has failed to properly demonstrate and show by the record and under the requirements of Rule 2-17 (e) any error of the trial court in directing a verdict for the Appellee.

Judgment affirmed.

Carson, J., Faulconer, J., concur.

Prime, J., not participating.

NOTE.—Reported in 227 N. E. 2d 450.