**MARKSILL SPECIALTIES, INC.,**
**Appellant (Defendant Below),**

v.

**Theodore BARGER, Appellee**
**(Plaintiff Below).**

**No. 3–281A42.**

Court of Appeals of Indiana,
Third District.

Nov. 25, 1981.

Rehearing Denied Jan. 7, 1982.

Kenneth R. Martin, Goshen, for appellant.

Charles H. Grodnik, Thorne, Grodnik, & Ransel, Elkhart, for appellee.

HOFFMAN, Presiding Judge.

Marksill Specialties, Inc. appeals the judgment of the trial court awarding damages to Theodore Barger for Marksill's breach of a written contract to pay R.B.I. Sales commissions. Issues raised by Marksill include:

(1) whether the trial court erred in failing to grant Marksill's motion to dismiss the cause because Barger was not the real party in interest;

(2) whether the trial court erred in excluding evidence that Marksill's president lacked authority to enter into the contested contract when the issue was included in Marksill's contentions in the pre-trial order;

(3) whether a proper foundation was laid for the introduction of a form contract into evidence;

(4) whether the contract was terminable at will due to the lack of a specific termination date;

(5) whether the contract is void for lack of certainty and mutuality;

(6) whether the court erred in its construction of the contract;

(7) whether the contract was void for lack of or failure of consideration; and

(8) whether the evidence is sufficient to sustain the judgment.

On February 15, 1973 Marksill entered into an employment agreement with Theodore Barger. Barger was employed to perform certain engineering and design duties. Prior to the time of the employment agreement, Marksill entered into a representative agreement with R.B.I. Sales, a partnership formed by Barger and Noel Ryan.

The representative agreement provided that in return for R.B.I. Sales' efforts in securing new accounts, Marksill would pay R.B.I. Sales a 5% commission based on the amount of sales to Dexter Axle Company. The employment agreement provided: "In the event Theodore Barger should no longer be employed, commission checks for the Dexter Account will continue to be paid as per prior Representative Agreement." The representative agreement provided: "This agreement is valid and payment shall continue as long as _____ sells any product to any company listed."

Marksill contends initially that the trial court erred in denying its Ind.Rules of Procedure, Trial Rule 12(B)(6) motion to dismiss. The motion was based on the requirement of Trial Rule 17(A) that "[e]very action shall be prosecuted in the name of the real party in interest." Marksill argues that it entered into the representative agreement with R.B.I. Sales, not Barger, and therefore R.B.I. Sales is the real party in interest.

■ The motion to dismiss was made at the close of Barger's case. The trial court denied the motion as being untimely filed. Marksill is correct in its contention that such a ruling is in error. In *Childs v. Rayburn, Adm.* (1976), 169 Ind.App. 147, 346 N.E.2d 655 this Court held that a motion to dismiss premised on TR. 17(A) is timely even though it is made at the midpoint of a trial. The trial court's error in this regard is, however, harmless.

■ Marksill argues that if Barger is permitted to maintain the action, it would still be possible for Ryan, the other partner

of R.B.I. Sales, to also bring an action on the contract. Marksill could thus be liable for two judgments based on the same contract. The record shows that R.B.I. Sales was a partnership composed of only Barger and Ryan. Ryan abandoned the partnership sometime after the representative agreement was entered into.

IC 1971, 23–4–1–29 (Burns Code Ed.) provides:

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Ryan's abandonment of the partnership clearly effected a dissolution. IC 1971, 23–4–1–37 (Burns Code Ed.) provides:

"Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs: Provided, however, That any partner, his legal representative or his assignee, upon cause shown, may obtain winding up by the court."

Included within the winding up of the partnership's affairs is the performance of existing contracts, the collection of debts or claims due the partnership and the payment of partnership debts. *McKinley v. Long* (1949), 227 Ind. 639, 88 N.E.2d 382. Pursuant to IC 1971, 23–4–1–37, Barger, as the sole remaining partner, is entitled to wind up the partnership's affairs. Barger is therefore the real party in interest to maintain this action. Ryan, as the abandoning partner, may be entitled to a share of the proceeds but his cause of action would be against Barger, not Marksill.

■ Marksill next contends that the trial court erred in excluding evidence that Marksill's president lacked authority to enter into a lifetime or perpetual agreement. Although the issue was included within Marksill's contentions in the pretrial order, the trial court did not err in excluding the evidence. The representative agreement provided that the commission would be paid so long as Marksill continued to sell certain products to Dexter Axle. The contract is therefore neither a lifetime, nor a perpetual contract, but rather, a contract terminable upon the happening of a certain condition. Whether Marksill's president had authority to enter into a lifetime or perpetual contract is irrelevant to the issues involved in this case.

■ The next issue raised by Marksill is whether there was a sufficient evidentiary foundation for the admission of a form contract into evidence. Marksill argues that Barger did not make a showing that a diligent search had been made in order to locate the original contract. Admission of secondary evidence absent such a showing of diligence violates the best evidence rule.

■ Generally, it is within the discretion of the trial court to make the preliminary factual determination of whether an adequate showing of diligence has been made. *Amer. United Life Ins. Co. v. Peffley* (1973), 158 Ind.App. 29, 301 N.E.2d 651; *Johnson v. Jordan* (1917), 66 Ind.App. 110, 115 N.E. 600. Accordingly, the trial court's determination will be disturbed only upon a showing of an abuse of discretion.

In the present case, Barger testified that his former partner, Ryan, informed him that the original contract had been destroyed and that no copies had been retained. It is within the province of the trial court to judge the credibility of the witnesses. Marksill has failed to establish that the trial court abused its discretion in accepting Barger's testimony and determining that an adequate showing of diligence had been made.

■ Marksill also contends, citing 12 I.L.E. *Evidence* § 83 (1959), that Indiana law requires that:

"[t]he loss of the writing must be proved by the person who had it at the time of the loss or into whose custody it is traced, if he still is alive."

Recent Indiana decisions have not construed the exceptions to the best evidence rule as narrowly as does the Indiana Law Encyclopedia. The proponent of secondary evi-

dence need only satisfactorily demonstrate to the trial court that the original writing is lost. *Davis v. Schneider* (1979), Ind.App., 395 N.E.2d 283; *Amer. United Life Ins. Co. v. Peffley, supra.* The determination of whether an adequate showing of unavailability is made is within the discretion of the trial court. Barger's testimony that the contract was destroyed in 1972, before this litigation was contemplated, obviously persuaded the trial court that the original representative agreement was unavailable through no fault of Barger. Marksill has again failed to establish an abuse of discretion.

■ Marksill next contends that the representative agreement was terminable at will, by either party, because it contains no specific termination date. It is true, as Marksill asserts, that a contract providing for continuing performance and which has no termination date, or which provides that it will last indefinitely, is terminable at will by either party. *House of Crane v. Fendrich* (1970), 146 Ind.App. 478, 256 N.E.2d 578; *Monon Railroad, etc. v. N. Y. Central R. Co., etc.* (1967), 141 Ind.App. 277, 227 N.E.2d 450.

■ The representative agreement in the present case does not fall within the category of contracts which have no termination date or which provide that they will last indefinitely. Although a date is not specified, the representative agreement does contain a provision that sets out a condition which would terminate Marksill's obligations. As noted previously, that condition is the discontinuance of the sale of certain products to Dexter Axle Company. The representative agreement, containing a provision for termination, is terminable in accordance with its terms and not at the will of either party.

Marksill next argues that the representative agreement is unenforceable because of a lack of mutuality. Marksill also contends that the representative agreement lacks sufficient certainty to be enforceable.

■ The existence of a valid contract depends upon mutuality of obligation, i. e., there can be no contract unless both parties are bound. *Davis v. Davis, Director* (1926), 197 Ind. 386, 151 N.E. 134. Where, however, one party to the agreement acts upon the promise of the other party and performs his part of the agreement, the contract is not unenforceable for lack of mutuality. *Eichholtz v. Taylor et al.* (1882), 88 Ind. 38; *Seco Chemicals v. Stewart* (1976), 169 Ind.App. 624, 349 N.E.2d 733; *Wallace v. Mertz, Admr.* (1927), 86 Ind.App. 185, 156 N.E. 562. In the present case, Marksill promised to compensate R.B.I. Sales for its efforts in securing new accounts. R.B.I. Sales made efforts to secure new accounts. Marksill is therefore obligated to perform its part of the bargain. The contract does not lack mutuality.

■ Likewise, the contract does not lack certainty. Although the form contract which was introduced into evidence contained blank spaces, there was sufficient testimony from which the trial court could ascertain the terms of the original agreement. This testimony is therefore sufficient to establish the requisite certainty.

The next issue raised by Marksill is whether the trial court erred in not construing the agreement so as to give effect to the reasonable expectations of the parties. Marksill contends that the contract is ambiguous and that the ambiguities should be resolved against R.B.I. Sales, the drafter of the agreement.

■ A contract is ambiguous only where reasonable people could find its terms susceptible to more than one interpretation. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838. Ambiguity is not established by the mere fact that a controversy exists. *Liddy v. Companion Ins. Co.* (1979), Ind.App., 390 N.E.2d 1022. Where no defect in the formation of a contract is alleged, the terms of the contract, if unambiguous, are conclusive upon the question of the parties' intentions. *Piskorowski v. Shell Oil Co., supra.* Whether an ambiguity exists must be determined by application of the following principles:

1) Words used in a contract must be given their common meaning unless, from

the entire contract and the subject matter thereof, it is clear that some other meaning was intended and

2) Words, phrases, sentences, and paragraphs of a contract are not to be read alone; the intention of the parties must be gathered from the entire contract.

*Piskorowski v. Shell Oil Company, supra.*

■ The representative agreement is not ambiguous. By the express terms of the contract, in exchange for the efforts of R.B.I. Sales in securing new accounts, Marksill agreed to pay R.B.I. Sales a 5% commission so long as it continued to sell products to Dexter Axle Company. The representative agreement was correctly construed in accordance with its express terms by the trial court.

Marksill contends next that the representative agreement was void for lack of, or failure of, consideration. According to Marksill, if the consideration recited in the agreement is the efforts of R.B.I. Sales in securing new accounts, there is a failure of consideration because the evidence shows that no new accounts were in fact secured. On the other hand, Marksill argues that if the trial court was correct in finding that the agreement did not require R.B.I. Sales to service the accounts, there is a total lack of consideration.

Initially it must be noted that specific findings of fact were neither requested, nor required. Indiana Rules of Procedure, Trial Rule 52(A). The fact that, in its opinion, the trial court found that the agreement did not require R.B.I. Sales to service the accounts, does not represent an exclusive finding with regard to consideration. On the contrary, the trial court made no specific findings regarding consideration.

■ The contract provides for the efforts of R.B.I. Sales in securing new accounts. This is adequate consideration for Marksill's promise to pay a commission. Additionally, Marksill's assertion that no new accounts were secured is not supported by the record. Although Marksill had been doing business with Dexter Axle prior to the execution of the representative agreement, the evidence shows that R.B.I. Sales negotiated with Dexter Axle for the introduction of a new line of products manufactured by Marksill. This new line of products may rightfully be viewed as a new account. The contract is therefore supported by adequate consideration.

■ Finally, Marksill challenges the sufficiency of the evidence. The only new issue Marksill raises in its sufficiency argument is whether the evidence is sufficient to establish that the form contract entered into evidence contained the same provisions as the representative agreement which R.B.I. Sales and Marksill entered into.

Barger testified that the form contract contained the same provisions as the representative agreement Marksill entered into with R.B.I. Sales. Mark Norman Sill, president of Marksill, testified that he could not state that the form contract did not contain the same provisions. This Court will neither weigh the evidence nor judge the credibility of the witnesses. These functions are within the province of the trial court. Based on the testimony, the evidence is sufficient to sustain the trial court's judgment.

Having found no reversible error, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.