5 F.3d 224
 144 L.R.R.M. (BNA) 2334, 126 Lab.Cas. P 10,858
 INTERNATIONAL UNION OF UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, U.A.W. and United
Automobile, Aerospace and Agricultural Implement Workers of
America (UAW), Local Union No. 2052, Plaintiffs-Appellants,
v.
RANDALL DIVISION OF TEXTRON, INC., Defendant-Appellee.
 No. 92-3136.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 14, 1993.
Decided Sept. 14, 1993.
 
 Barry A. Macey (argued), Janice Kreuscher, Macey, Macey & Swanson, Indianapolis, IN, for plaintiffs-appellants.
 Hudnall A. Pfeiffer (argued), Todd M. Nierman, Baker & Daniels, Indianapolis, IN, for defendant-appellee.
 Before COFFEY and RIPPLE, Circuit Judges, and RONEY, Senior Circuit Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 The United Automobile, Aerospace and Agricultural Implement Workers of America and Local Union No. 2052 (collectively "the Union") filed a complaint under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1988), alleging that Randall Division of Textron, Inc. ("Randall") had breached a July 1987 contract between it and the Union by refusing to arbitrate discharge grievances. The Union sought an order compelling Randall to submit the discharge grievances to final and binding arbitration, an award of costs for maintaining the action, as well as attorneys' fees. In denying the parties' cross motions for summary judgment the district court ruled that the arbitration clause was of indefinite duration and therefore was terminable at will by either party. The parties and the court agreed that, in lieu of trial, the parties would submit the sole remaining issue (whether Randall had effectively repudiated its obligation to arbitrate discharge grievances) to the court for decision on stipulated facts and exhibits. The court entered judgment in favor of Randall, concluding that Randall's withdrawal of recognition from and refusal to bargain with the Union in late March of 1989 constituted an effective repudiation and termination of its contractual obligation to arbitrate grievances. The Union appeals the court's ruling that the arbitration clause was of indefinite duration and therefore was terminable at will. Because we disagree with the district court's finding that the arbitration clause was of indefinite duration, we reverse and remand to the district court for further findings of fact to determine precisely when the parties intended the clause to terminate.
 
 I. BACKGROUND
 
 2
 In early January of 1987 Randall took over operations of a manufacturing facility in Morristown, Indiana and began to produce the same products as the facility's prior owner, Anderson Cargo of Indiana. The Union had continuously represented the production, laboratory, and maintenance workers at the facility since 1978. A three-year collective bargaining agreement between the Union and Anderson Cargo was scheduled to expire in November of 1987. In late January of 1987 the Union asked Randall to recognize it as the exclusive bargaining representative of Randall's employees and to begin collective bargaining negotiations. Randall refused, so the Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). After investigating the charge, the NLRB issued a complaint and filed an action in federal district court seeking injunctive relief under section 10(j) of the National Labor Relations Act, 29 U.S.C. Sec. 160(j) (1988).
 
 
 3
 In July of 1987 Randall and the Union entered into a "Memorandum of Agreement" ("Agreement") to terminate the charges before the NLRB and the district court. Under the Agreement, the Union agreed to withdraw its unfair labor practice charge pending before the NLRB, the NLRB agreed to dismiss its section 10(j) petition, and Randall agreed to recognize the Union as the exclusive collective bargaining representative for the appropriate labor groups, to enter into grievance procedures with the Union over any terminated, non-probationary employees, and to arbitrate any unresolved termination controversies. Additionally, the Union agreed that there would be a moratorium on Randall's obligation to bargain over wages, hours, and other terms and conditions of employment for a period of eighteen months after Randall received clear title to the manufacturing facility, subject to Randall's agreement to process and arbitrate grievances regarding the termination of non-probationary employees. Randall received clear title in August of 1987.
 
 
 4
 Randall withdrew recognition of the Union and refused to bargain with it on the ground that it had a good faith doubt as to the Union's majority status in March of 1989, a point in time after the expiration of the eighteen-month moratorium. Thereafter, the Union filed another unfair labor practice charge with the NLRB alleging that Randall's refusal to bargain with it violated its obligations under the Agreement. Following a hearing, an administrative law judge determined that by refusing to bargain with the Union, Randall was in violation of the National Labor Relations Act. The judge found that the Agreement was not a collective bargaining agreement, but rather a settlement agreement under which the Union made a number of concessions in exchange for Randall's promise to bargain at the conclusion of the eighteen-month moratorium. The NLRB unanimously affirmed the judge's decision, stating that the agreement imposed a duty on Randall to bargain with the Union for a reasonable period of time following the eighteen-month moratorium. A panel of this court denied Randall's petition for review of the NLRB's decision and granted the NLRB's petition for enforcement of its order. See Randall Div. of Textron, Inc. v. NLRB, 965 F.2d 141, 143 (7th Cir.1992).
 
 
 5
 Meanwhile, between June of 1989 and December of 1990, Randall discharged several employees in the labor groups represented by the Union. For each, the Union grieved the discharge and, after Randall refused to follow the procedure for grievances outlined in the Agreement, it requested that Randall arbitrate the grievance. When Randall refused to arbitrate any of the grievances, the Union filed an action under section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. Sec. 185 (1988), for breach of contract, citing the arbitration clause of the "Memorandum of Agreement" as the portion of the contract breached.
 
 
 6
 The Union and Randall filed cross-motions for summary judgment. The district court denied both motions on November 14, 1991. It determined that the arbitration clause in the Agreement was of indefinite duration and therefore was terminable at the will of either party upon reasonable notice to the other party, and that there was a triable issue of fact whether Randall gave the Union reasonable notice that it was terminating its obligations under the arbitration clause.[1] In lieu of trial, the parties and the court agreed that the parties would submit the case to the court for decision on stipulated facts and exhibits. On August 6, 1992, the district court entered judgment in favor of Randall. The court reiterated its position that the arbitration clause in the Agreement was of indefinite duration and was terminable at will by either party upon reasonable notice to the other party. The court then concluded that: (1) Randall effectively repudiated its obligations under the clause in March of 1989 when it withdrew recognition from and refused to bargain with the Union pursuant to the Agreement; (2) by this repudiation Randall notified the Union that it was terminating its obligation to arbitrate; and (3) the notice was reasonable because it was given more than sixty days before the Union attempted to file the first grievance. The Union appeals.
 
 II. DISCUSSION
 
 7
 The Union disputes the district court's ruling that the arbitration clause in the Agreement was of indefinite duration and therefore was terminable at the will of either party. As noted above, the court made this ruling in its interlocutory order of November 14, 1991, denying the parties' cross-motions for summary judgment. On August 6, 1991, after the parties submitted stipulated facts and exhibits concerning the sole remaining issue (whether Randall had effectively repudiated its obligation to arbitrate discharge grievances) the court granted summary judgment in favor of Randall. The Union appeals from this grant of summary judgment, the final judgment.[2] The interlocutory ruling that the Union disputes merged into the district court's final order and thereby became appealable. EEOC v. Sears, Roebuck & Co., 839 F.2d 302, 353 n. 55 (7th Cir.1988).
 
 
 8
 We review the grant of summary judgment in Randall's favor de novo and apply the same standards as those applied by the district court. Kennedy v. United States, 965 F.2d 413, 417 (7th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the record and all inferences drawn from it in the light most favorable to the Union. Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990).[3]
 
 
 9
 The Union argues that the district court erred in finding that the arbitration clause in the Agreement was of indefinite duration and therefore was terminable at the will of either party because the language of the Agreement and the surrounding circumstances demonstrate that the contracting parties intended that Randall's obligation to arbitrate discharge grievances was to continue until the commencement of bargaining between the parties for a new labor contract. We start with the language of the Agreement:
 
 
 10
 4. Randall will grant recognition to the International Union, UAW, and its Local 2052 as the exclusive collective bargaining representative for an appropriate production and maintenance unit at Randall's Morristown, Indiana, plant, effective upon the approval of the withdrawal of the above-described charges.
 
 
 11
 5. The Union agrees that there will be a total moratorium on any obligation by Randall to bargain over wages, hours and other terms and conditions of employment for a period of eighteen (18) months from the date Randall receives clear title to the Morristown plant real estate and improvements as evidenced by its receipt of valid deeds, with the exception identified in paragraph 6.
 
 
 12
 6. Six months after Randall receives clear title as described in paragraph 5, the Union may file a grievance for a non-probationary employee within the appropriate production and maintenance unit who has been discharged from employment with Randall, alleging that the discharge was for other than just cause. Such grievance will be subject to a one-step grievance procedure in which the Company's Vice-President for Personnel and the Union's International Representative, or their designated representatives, shall meet to discuss the grievance. If, following such discussion, the Union determines to take the discharge grievance to arbitration, it shall so notify the Company within ten (10) days from the grievance meeting, and the parties thereafter shall select a mutually-agreeable arbitrator independently or from a panel submitted by the Federal Mediation & Conciliation Service. The losing party shall pay the cost of the arbitrator. Any dispute about the employee's status as a non-probationary employee within the appropriate production and maintenance unit shall be resolved by the arbitrator for the purpose of application of this grievance procedure only. The arbitrator's decision will be final and binding on the Company, Union and employee and the Union agrees that it will not initiate or sanction any strike or other concerted activity regarding the discharge.
 
 
 13
 As the Union concedes, the Agreement does not expressly specify the duration of Randall's obligation to arbitrate discharge grievances. Nor does the Agreement specify how Randall could terminate the contract. A labor contract of indefinite duration or one that does not specify a time or manner of termination is terminable at the will of either party upon reasonable notice to the other party. Montgomery Mailer's Union No. 127 v. Advertiser Co., 827 F.2d 709, 715 (11th Cir.1987); Communication Workers of Am. v. Southwestern Bell Tel. Co., 713 F.2d 1118, 1123 (5th Cir.1983). Nevertheless, if a contract contains a provision allowing the contract to terminate upon the occurrence of a specified event, the contract is not terminable at will. First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1012 (7th Cir.1985) (applying Illinois law); Consolidated Labs., Inc. v. Shandon Scientific Co., 413 F.2d 208, 211-12 (7th Cir.1969) (same); Marksill Specialties, Inc. v. Barger, 428 N.E.2d 65, 69 (Ind.Ct.App.1981).
 
 
 14
 The Union submits that the Agreement provides that the arbitration provision in the contract (paragraph 6) was to terminate upon a specific event--the commencement of bargaining. Nevertheless, as Randall notes, while the Agreement specifies precisely when Randall's obligation to arbitrate discharge grievances was to begin, it is silent about when the obligation was to end. Paragraph 5 of the Agreement specifies an eighteen-month moratorium on bargaining over the terms and conditions of employment from the time Randall received clear title to the Morristown plant (sometime in August of 1987) and exempts the arbitration of discharge grievances from the moratorium, but says nothing about how far into the future Randall would be obligated to arbitrate discharge grievances. Paragraph 6 provides that Randall was to commence arbitrating discharge grievances six months from when it secured clear title to the Morristown plant and sets forth the agreed-upon procedure for arbitrating discharge grievances, but the provision is silent about when the obligation to arbitrate was to terminate. All of the cases that the Union relies upon for the proposition that a contract is not of indefinite duration if the contract designates an event signalling termination involved contracts that designated a specific event of termination. See First Commodity, 766 F.2d at 1016 (specific event allowing termination was breach of contract by either party); Shandon Scientific, 413 F.2d at 211 (agreement specifically provided that contract was to continue until new main distributor was appointed and Consolidated Laboratories became main dealer of Shandon's products); Marksill Specialties, 428 N.E.2d at 69 (contract provided that discontinuance of sale of certain products to particular customer would terminate parties' obligations). The Agreement in this case does not designate a specific event that would trigger the termination of Randall's obligation to arbitrate discharge grievances.
 
 
 15
 The Union also argues that, even if the Agreement is silent as to the duration of Randall's obligation to arbitrate discharge grievances, Randall's obligation was enforceable for a reasonable amount of time. The Union contends that a reasonable amount of time under the circumstances in this case was until the commencement of bargaining. This court and other courts have long recognized that when a contract is silent as to the time for performance, the law will imply a reasonable time for performance. See First Commodity, 766 F.2d at 1012 (applying Illinois law); William B. Tanner Co. v. Sparta-Tomah Broadcasting Co., 716 F.2d 1155, 1158-59 (7th Cir.1983) (applying Wisconsin law); Grand Lodge Hall Ass'n, I.O.O.F. v. Moore, 224 Ind. 575, 70 N.E.2d 19, 22 (1945), aff'd without opinion, 330 U.S. 808, 67 S.Ct. 1088, 91 L.Ed.2d 1265 (1947); Indiana Farmers Mut. Ins. Co. v. Walters, 221 Ind. 642, 50 N.E.2d 868, 870 (Ind.1943); Fraternal Order of Police Lodge No. 52 v. City of Elkhart, 551 N.E.2d 469, 472 (Ind.Ct.App.1990); Monon R.R. v. New York Cent. R.R., 141 Ind.App. 277, 227 N.E.2d 450, 456 (Ind.Ct.App.1967). The district court should have determined the reasonable duration of Randall's obligation to arbitrate discharge grievances.[4]
 
 
 16
 "What constitutes a reasonable time depends upon the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties to the contract." Fraternal Order of Police Lodge No. 52, 551 N.E.2d at 472 (citing Jay Clutter Custom Digging v. English, 181 Ind.App. 603, 393 N.E.2d 230, 232 (Ind.Ct.App.1979)). As noted above, the Agreement settled a dispute over Randall's refusal to recognize and bargain with the Union. The Union desired immediate recognition and bargaining and Randall wanted a respite between its purchase of the Morristown plant and its expansion of the business. Under the terms of the Agreement the Union agreed to withdraw its charges that Randall had engaged in unfair labor practices and to grant Randall an eighteen-month break from bargaining so that Randall could expand its business at the Morristown plant. In exchange, Randall agreed to grant immediate recognition to the Union, to bargain with the Union for a reasonable amount of time after the eighteen-month moratorium expired, see Randall, 965 F.2d at 147, and to arbitrate discharge grievances beginning six months after it secured clear title to the Morristown plant. The function of the arbitration provision in the Agreement was to define the Union's circumscribed role at the Morristown plant at least until the eighteen-month moratorium passed and bargaining over the Union's full role could begin. We believe that the arbitration provision's limited function implies that Randall's obligation to arbitrate discharge grievances terminated either when the eighteen-month moratorium expired or, alternatively, when the parties actually commenced bargaining, for those are the two points at which the parties contemplated that the Union's role in the Morristown facility would expand. Determination of the precise point at which Randall's obligation terminated is a triable issue of fact that precludes summary judgment. We REVERSE the court's grant of summary judgment in favor of Randall and REMAND to the district court for a determination of whether Randall's obligation to arbitrate discharge grievances terminated eighteen months after the date on which Randall secured clear title to the Morristown plant or, alternatively, when collective bargaining commenced.
 
 
 
 *
 The Honorable Paul H. Roney, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, is sitting by designation
 
 
 [1]
 The court actually ruled that the entire Agreement was of indefinite duration. Nevertheless, in light of this court's holding in Randall, 965 F.2d at 147, that the Agreement imposed an obligation on Randall to bargain with the Union for a reasonable period of time, the only portion of the district court's ruling that survives is that the obligation to arbitrate was of indefinite duration
 
 
 [2]
 There was, understandably, some confusion as to the basis for the district court's final judgment. In its August 6, 1992 order the court stated that it was granting Randall's motion for summary judgment and was entering summary judgment in favor of Randall. Yet in the final judgment that it entered that same day pursuant to Federal Rule of Civil Procedure 58, the court said nothing about summary judgment. Nevertheless, we believe that the August 6, 1992 order is best characterized as a grant of Randall's motion for summary judgment that had earlier been denied, and that the court's failure to mention a summary judgment in the Rule 58 separate document was an oversight
 
 
 [3]
 Our standard of review is not, as Randall contends, clear error. Randall correctly notes that the court's factual findings are shielded by the clear error standard of review. Nevertheless, the ruling the Union challenges--that the arbitration provision was of indefinite duration and therefore was terminable at will--was not a factual finding; rather, it was a finding that the Union had failed to produce facts and evidence that were sufficient to establish its position that the arbitration provision was of limited and discernible duration. Central States, Southeast and Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369, 1373-74 (7th Cir.1992), which holds that a district court's grant of summary judgment is akin to a factual finding and therefore should be reviewed for clear error if: (1) it was based upon stipulated facts; (2) the sole issue was one of characterization; and (3) the opponent of summary judgment claimed no right to a jury trial, does not compel us to use the clear error standard of review here. The court's determination that the arbitration provision was of indefinite duration and was not terminable at will was not based on stipulated facts--the parties disputed the facts. Moreover, the sole issue before the court was not one of characterization. The court had to determine not only whether the arbitration provision was of indefinite or limited duration, but also whether Randall had breached it. Slotky would have required us to review the court's finding for clear error that Randall effectively repudiated its obligation to arbitrate its discharge grievances (if the Union had challenged the finding on appeal) because that finding was based upon stipulated facts. Thus the only question for the court was whether Randall's conduct could be characterized as effective or ineffective repudiation
 
 
 [4]
 Because the Agreement is a settlement of the Union's charges that Randall engaged in unfair labor practices rather than a collective-bargaining agreement, we need not make an exhaustive inquiry into whether the common law principle of implying a reasonable duration of a contract that is silent as to its duration is compatible with national labor policy. In any event, we are confident that implying a reasonable duration is compatible with the policy of making contracts in the labor arena more secure than garden variety contracts to avoid industrial strife. See Merk v. Jewel Food Stores Div. of Jewel Cos., 945 F.2d 889, 894 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992)